# JACK ANTHONY v. STATE.

No. A-2639:   Opinion Filed September 18, 1916.

(159 Pac. 934.)

1.   **APPEAL—Review.**  In reviewing a capital conviction, this court not only acts in the capacity of an ordinary appellate tribunal, reviewing errors of law raised by exceptions duly taken, but it is the duty of the court to consider the entire record, including the evidence, for the purpose of determining whether any ''error complained of has probably resulted in a miscarriage of justice.'' If upon such examination, the court is satisfied that the verdict is contrary to the evidence and the law, or if considerations of justice require a new trial, it is the duty of the court to grant it, whether any exception shall have been taken or not in the court below.

2.   **APPEAL—Modification of Sentence.**  Under section 6003, Rev. Laws, this court, exercising its revisory jurisdiction, has the power to modify any judgment and sentence appealed from, in the furtherance of justice, by reducing the sentence.

3.   **APPEAL—Modification of Sentence.**  The power of this court to modify a judgment inflicting the death penalty for murder to imprisonment for life at hard labor when deemed proper in the furtherance of justice is not the power to commute by the chief executive of the state.  The judicial power to modify a judgment and the executive power to pardon or commute are wholly distinct in their nature.  The one is an award of justice.  The other is an act of grace.

4.   **HOMICIDE — Punishment—Evidence—Sufficiency.**  Evidence reviewed, in a prosecution for murder, and **held** sufficient to justify a conviction for murder, but insufficient under the facts and circumstances of the case to warrant imposing the death penalty, and for this reason the judgment and sentence is modified to imprisonment in the penitentiary for life at hard labor.

*Appeal from the District Court of Muskogee County;*
*R. P. de Graffenried, Judge.*

Jack Anthony, convicted of murder with death penalty assessed, appeals.  Judgment and sentence modified to life imprisonment and as so modified affirmed.

*P. A. Gavin,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error, Jack Anthony, herein referred to as the defendant, was convicted of wife murder and his punishment assessed at death on an information filed in the district court of Muskogee county on the 14th day of September, 1915, wherein it was charged that the said Jack Anthony, in said county, on the 12th day of June, 1912, did kill and murder one Nancy Anthony, by shooting her with a pistol. In pursuance of the verdict of the jury he was sentenced to suffer death by electrocution as provided by law. The judgment was rendered on the 17th day of November, 1915. The appeal is from the judgment and sentence.

No brief has been filed on behalf of the plaintiff in error, and we have not been favored with an oral argument in his behalf. The grounds of the motion for a new trial are that "The verdict is not sustained by sufficient evidence and is contrary to law. That the court erred in its rulings on the admission and rejection of evidence; to which rulings of the court the defendant then and there excepted. Errors of law occurring at the trial and excepted to by defendant, and which are manifest by inspection of the record."

The assignments of error are the same with the additional assignment that the court erred in overruling the motion for a new trial.

Upon a careful examination of the record we find that no exceptions were taken on the trial to any ruling of the court on the admission or rejection of evidence, and no objections were made or exceptions taken to the instructions given by the court; and the charge upon the material points was as favorable to the defendant as he could properly request. No objection was made to the sufficiency of the amended information. It properly charges the crime of murder and is sufficient.

In reviewing a capital conviction this court acts not only in the capacity of an ordinary appellate court reviewing questions of law raised by exceptions duly taken, but under the provisions of our procedure criminal it is the duty of this court to consider

the entire record for the purpose of determining whether any "error complained of has probably resulted in a miscarriage of justice," (Sec. 5005, Rev. Laws). If after an examination of the whole record the court is of the opinion that the verdict is contrary to the evidence and the law, or that justice requires a new trial, it is the duty of the court to grant it whether any exception shall have been taken or not in the court below. Our code further provides that this court has the power to modify any judgment appealed from when deemed proper in the furtherance of justice. (Sec. 6003, Rev. Laws).

We have given this case that careful consideration which its importance to the public and its solemn consequences to the defendant demand. From our examination of the record we are brought to the conclusion that the verdict, in so far as it responds to the issue of guilty or not guilty of the crime of murder, is sustained by the evidence. While the jury might have had a reasonable doubt, they might also with propriety regard the evidence as sufficient to exclude every reasonable doubt of the defendant's guilt. The only other question presented by this appeal is the sufficiency of the evidence to warrant the extreme penalty of the law.

In the case of *Fritz v. State,* 8th Okla. Cr. 342, 128 Pac. 170, it is said:

"The power of this court to modify a judgment inflicting the death penalty for murder to imprisonment for life at hard labor, when deemed proper in the furtherance of justice is in no sense the power of commutation of the sentence of the lower court. Commutation can be granted only by the chief executive of the state, and is granted as a matter of clemency. The judicial power to modify a judgment and sentence and the executive power to pardon, parole, or commute are wholly distinct in their nature. The one is an award of justice, and the other is an act of grace. Commutation is a matter of discretion, and may be refused. Justice is imperative, and must not be denied. The fact that the governor has the power to commute does not abridge the defendant's right to appeal to this court for relief. In other words the provision of our criminal procedure act makes it the

duty of this court to review the record, and in a proper case, if necessary, in the futherance of justice, modify the judgment so as to prevent the imposition of punishment which the evidence will not warrant."

It appears that all the parties concerned in the tragedy were negroes; that between sundown and dark the defendant in attempting to prevent his wife from leaving their home shot her through the body with a pistol, and the next evening she died as the result of the gunshot wound. Two eye witnesses of the tragedy testified for the state.

The first witness, Jim Martin, testified that he lived near the corner of Third and Kalamazoo streets in Muskogee, and the defendant and his family lived in the next house; that on the morning of the tragedy, about 4 o'clock, the deceased came to his house, saying that she had just returned on the train from Dallas, Texas; that Mary Anthony, the fourteen-year-old daughter of the Anthony's, was staying at his house at the time. That the defendant visited his house once or twice that afternoon and the last time said to him, "my wife is here and I want you to put her out," and he told the defendant, "if you want your wife she is in the house, come in and get her and take her out," and then witness went and sat on the back porch; that shortly after the deceased rushed to the back porch where he was sitting and the defendant came around from the front and they met in the yard and between the houses, the deceased said, "I thought when I come back home you were not going to bother me any more," and the defendant laughed and said, "I am not going to bother you, come on home," and she said, "I am not going to go home with you"; that her daughter was following her and the girl said, "Papa, don't shoot Mama," and he said, 'come on and go home," that they "tussled" there a little while, and he said, "Get out of the way, Mary," and shoved the revolver around and shot his wife. That at the time a cab was standing in front of the house.

The second, Mary Anthony, testified that she was seventeen years old, daughter of the defendant and the deceased, that her

mother had been to Dallas and arrived in Muskogee at 4 o'clock
Monday morning and went to Jim Martin's; that afternoon her
father came to Martin's and went into the room where her mother
was and they sat down together and were talking; that he then
went off and her mother telephoned for a cab; that there were
other girls there and one was playing the piano; when the cab
arrived her father returned and stood outside the screen door
and would not let her out, and he told the cab driver to leave;
then her mother ran through the house and out the back door,
and she followed her and her father ran around the house and
ran up to them and she threw her arms around her mother and
her father grabbed her and pulled her back and shot her mother.
That her father then ran away.

Thomas Ransom, a witness for the state, testified that about
3 o'clock on the second or third night after the shooting the
defendant came to his place in Muskogee, and asked him if his
wife had died, and he told him she was dead; that he left a
loaded pistol there with one empty cartridge shell in it, and another
cartridge was snapped; that he said he was hungry and witness
gave him a quarter, and after staying about ten minutes he left.

Two or three witnesses testified to previous threats made by
the defendant.

A deputy sheriff testified that he had a warrant for the
defendant and had been unable to locate him from June, 1912,
until September, 1915, at which time he arrested the defendant
at St. Joseph, Mo.

As a witness in his own behalf the defendant testified that
he was forty-three years old, and had been married to his wife
twenty-one years at the time of her death, and they had three
children. That they had been living in Muskogee about two
years when his wife left him; and was gone about two months
and then returned and in the month of June she went to Dallas.
That he bought her the ticket to go to Dallas and went to the
depot with her; that she said she would be back in four or five

days and he went to the station to meet her, but she did not come back on that train; that he was working that day on a sewer, and quit work at 3 o'clock; that his little son met him and said, "Papa, mamma is here and she is at Martin's," that he called on her there and then went home and cooked his supper; that his daughter, Mary, brought him a note from his wife telling him to come over there where she was, and he went to Martin's and talked to her and tried to get her to come home: that they went out on the porch and were sitting there when a cab drove up and the cabman asked if Mrs. Anthony was there and he answered that she was, but that she was not going anywhere. About that time his wife, who had went into the house, came to the screen door and he said, "you are not going off tonight," she said the cab came for her, and he said, "why do you want to act like this? You cannot be running around town that way. I have tried to tell you about how people talk about you running around town and I don't want that to occur any more. You ought not to do that; you are raising a little girl here and after you might be dead they will all look back and say what her mother was," and she said, "You know they talked about Jesus Christ when he was on earth," and she picked up a hand satchel and hung it on her arm and went out the back door; that he went around and met her between his house and the Martin house, and she said, "I am going North and you leave me alone," and she ran her hand into her grip and pulled out a pistol and he grabbed the gun barrel and then her wrists, and she said "turn it aloose, turn it aloose," and the gun went off; that his left hand was burned by the shot. That if his wife had filed suit for a divorce he did not know it.

The foregoing is a substantial statement of the evidence in the case.

While this court is satisfied by the evidence of the defendant's guilt, however after a patient consideration of the evidence we are convinced that it is insufficient to warrant the extreme penalty of the law. It is a fair inference from the facts and circumstances in evidence in this case that the defendant was provoked by the conduct of his wife, the probable effect of which

conduct would be to cause their ·daughter to lead an immoral life, as the defendant believed.

While the provocation was not sufficient to reduce the homicide from murder to manslaughter in the fire degree, yet considering the state of the defendant's mind at the time the homicide was committed, and it appearing that the testimony of the two eye winesses involved inconsistencies and contradictions, which it is needless to point out, we are of the opinion that the jury abused its discretion in assessing the death penalty and that for this reason the judgment and sentence should be modified to imprisonment in the penitentiary for life at hard labor. The judgment of the district court of Muskogee county as thus modified is affirmed.

ARMSTRONG and BRETT, J. J., concur.