## C. L. HARKINS v. STATE.

No. A-2792.	Opinion Filed May 4, 1918.

(172 Pac. 469.)

1. **TRIAL—Discretion of Trial Court—Physical Examination.** In a case of statutory rape in the first degree, where the trial court made an order that the prosecutrix submit to a physical examination to be made by two physicians selected by the defendant and at his expense, it is not a manifest abuse of discretion to refuse to modify said order to provide that said examination should be made at the expense of the county; it being shown that a physical examination of the prosecutrix had already been made by two reputable physicians at the expense of the county at the request of the county attorney, the necessity of a second examination at the expense of the county not having been made apparent. **Walker v. State**, 12 Okla. Cr. 179, 153 Pac. 209, distinguished.

2. **APPEAL AND ERROR—Improper Cross-Examination—Prejudicial Error.** The fact that the county attorney, on cross-examination of the defendant, asked a few questions which called for incompetent answers, does not of itself establish prejudicial error.

3. **SAME—Motion for New Trial—Denial—Reversal.** A motion for a new trial on the ground that the county attorney asked the defendant questions calling for incompetent answers was properly overruled, where it is not clear that prejudice resulted to the defendant therefrom, and the trial judge promptly sustained objections to such questions. This court would not be authorized to reverse a judgment of conviction solely on this ground, where evidence of guilt is clear and convincing, and the punishment was not prescribed by the jury.

*Appeal from District Court, Rogers County;*
*W. J. Campbell, Judge.*

C. L. Harkins was convicted of rape in the first degree, and sentenced to serve a term of 50 years in the penitentiary, and he appealed. Affirmed.

This alleged offense occurred in Nowata county, Okla., on the 3d day of September, 1915, at a public picnic held near the post office of Childers in that county. The de-

fendant was a married man past 50 years of age. The prosecuting witness was a girl between the ages of 12 and 13 at the time.

The prosecuting witness had been staying most of the time during the three years immediately preceding this occurrence at the rooming house of the defendant and his wife in the city of Nowata, known as the Valley House. Her mother, a widow, had also been staying at that place until her marriage to a man by the name of Lockhart, which occurred a few months before this picnic. When the mother of the prosecutrix married Lockhart, they moved to the city of Claremore in Rogers county, adjoining Nowata county, and it had been the practice of the prosecutrix, at the request of the wife of the defendant, after her removal to Claremore, to make visits with defendant's family at the Valley House in Nowata. The relationship of the defendant and this little girl grew to be intimate. She called him "Uncle Lum," and he displayed apparent affection toward her, and frequently was seen with her upon his lap.

A few days before this picnic, Mrs. Harkins wrote to the prosecutrix and asked her to make her a little visit. She came from Claremore to Nowata on the last Saturday in August, 1915, and on the Wednesday following was taken by the defendant to the scene of the picnic some ten or twelve miles northeast of Nowata. They rode out on an ordinary farm wagon loaded with coal, and on the way out stopped at a country grocery store to get some provisions. Both prosecutrix and the defendant got out of the wagon at this store, and the manner in which the defendant handled the prosecutrix when he put her back

into the wagon on that occasion was so vulgar as to attract the attention of the storekeeper.

After their arrival at the picnic grounds on Wednesday afternoon, arrangements were made with a man and his wife by the name of Crockett to let the little girl sleep in their tent, which was some ten or 20 feet away from the tent in which defendant slept. The defendant was operating a merry-go-round, and permitted the prosecutrix to ride on the merry-go-round, and also to help him sell tickets. The prosecutrix was not in very good health at that time, and apparently had been suffering from chills. The defendant took along some medicine to doctor her with, and gave her several doses of this medicine during the time they were at the picnic. Everything seemed to run along all right until the afternoon of Saturday, the 3d day of September, when the prosecutrix was seen to leave the picnic grounds going in a southerly direction, to go upon the public road running east and west, and to turn east on said road. A short time thereafter the defendant was seen to do the same thing. In about three-quarters of an hour they were seen to return from that direction together. The prosecutrix was walking peculiarly and crying, and the defendant was walking along beside her and apparently trying to get her to quit crying. The state produced five or six witnesses who testified to seeing these parties leave the picnic grounds, and to return thereto. The prosecutrix testifies that the defendant took her a short distance from the grounds into some underbrush and high weeds, and there asked her to "be his little girl," and accomplished an act of sexual intercourse with her. The defendant denies absolutely that he left the grounds with her, or accomplished any such act.

The prosecutrix stayed upon the picnic grounds until Sunday evening, when she was taken into the city of Nowata after having complained to certain ladies on the grounds that she was sore and stiff. Her conduct and appearance .aroused the suspicion of these ladies and caused the subsequent investigation by the prosecuting officers of that county. On Monday morning early a physical examination of the condition of the prosecutrix was made by the city physician of the city of Nowata and by the health officer of Nowata county, commonly called the county physician. As a result of such investigation, and from the facts above detailed, this prosecution was lodged. The investigation disclosed that there was swelling in the private parts of the prosecutrix, abrasions of the skin at the opening of the vagina, and that the hymen was completely ruptured, and that there was some indication of recent deposits of blood in the private parts; that the prosecutrix was very sore, and that her abdomen was considerably distended; that it was such a condition as would occur after the perpetration of an act of sexual intercourse.

After absolutely denying any unlawful relationship between himself and the prosecutrix, the defendant introduced several witnesses who testified that the prosecutrix was seen frequently in the company of two boys about 13 or 14 years of age during the time she was out at the picnic. Both prosecutrix and each of these boys denied their ever having any illicit relationship with prosecutrix. Defendant also testified that the prosecutrix fell off one of the horses on the merry-go-round in such a manner as likely to injure herself in the region of her private parts, but the prosecutrix testified that while she did slide off the side of the horse, she was not injured or ruptured

in any way by such action, and that the condition she complained of was caused wholly by the illicit relation between herself and the defendant.

A change of venue was granted defendant from Nowata to Rogers county, and there the trial occurred in January, 1916, resulting in the jury finding the defendant guilty of rape in the first degree, but failing to prescribe the punishment. Whereupon the court sentenced defendant to serve a term of 50 years in the state penitentiary, and from this judgment of conviction he has appealed and asks this court to reverse same upon two grounds of alleged error.

*Charlton & Farrell* and *E. P. Hill,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above.) The first ground of error relied upon is the alleged refusal of the court to appoint two physicians at the expense of Nowata county to make a physical examination of the prosecuting witness. The entire record upon this matter is as follows:

"By the Court: In this case the defendant asks the court to appoint two physicians to make an examination of the prosecuting witness, Inez Greenleaf, or the person upon whom it is alleged this rape was committed. It appears from the information in this case that the state has indorsed upon the information the names of two physicians, who are reputable physicians, and who, as the record of the preliminary examination discloses made an examination of Inez Greenleaf immediately after the time of the alleged commission of the crime, and that these witnesses are in attendance as witnesses for the

state. The court now is of the opinion that the defendant should have the right to have two physicians to make such examination as they may deem necessary in order to qualify themselves properly to give this testimony. In this case, on behalf of the defendant, the court now asks the defendant to name the two physicians whom he desires to have.

"By Counsel for the State: We would like to have our physicians present at the same time.

"By the Court: All right; the examination to be made by the two physicians in the presence of the physicians in attendance upon court as witnesses for the state; and at such examination, the county attorney or some one representing the county attorney and the defendant's counsel may have and are given by the court the right to be present at such examination. (Counsel for defendant now indicate to the court whom they desire to have appointed.)

"By the Court: At the request of the defendant and upon his selection the court appoints Drs. J. F. Means and W. F. Hayes. * * *

"Inez Greenleaf, of lawful age, being first duly sworn, the truth to testify, the whole truth, and nothing but the truth, on examination testified as follows:

"Direct Examination: Q. What is your name?"

"By Counsel for the Defendant: Now, if the court please, the defendant objects to the testimony offered by this witness until after the examination has been had by the physicians as ordered yesterday.

"By the County Attorney: If this is going to be argued we ask that (interrupted by counsel for defendant) —

"By Counsel for the Defendant: It is not going to be argued.

"By the Court: The court, in its discretion, now rules that the examination which was asked for yesterday

may be had as ordered, but not until after the direct examination of the witness in question. Immediately after the direct examination, if counsel for defendant desires, the examination asked for may be had, or the defendant may cross-examine the witness in question, and then the examination may be had which was ordered yesterday, and after the examination any further cross-examination which may be deemed necessary may be had by the defendant, but the examination ordered yesterday is by the court not allowed until after the direct examination of the witness now on the stand and the objection of the defendant is overruled. .

"By counsel for the Defendant: To which we except. * * *

"By the Court: Any further testimony on behalf of the state. .

"By the County Attorney: If the court please, at this time the state rests.

"By Counsel for the Defendant. The court please, before making the opening statement, there is one matter I desire to take up—that is, concerning the order that was made for the appointment of two physicians to make this examination. Your honor made that (interrupted by the county attorney) —

"By the County Attorney: We would like the jury excused if you are going to take that up at all.

"By the Court: There is nothing in this matter that the jury cannot hear.

"By Counsel for the Defendant: Nothing in the world. Everything that has been done has been done in the presence of the jury.

"By the Court: Go ahead.

"By Counsel for the Defendant: Here is the situation. That order was made that this examination be made at the expense of the defendant. Now I have talked with the defendant and with the physicians that were put

in the order, and it is impossible for Mr. Harkins to raise the money to pay for this examination. He simply cannot do it, and we would like to ask, in view of that fact, and I will file an affidavit and put it in the record if the court wants me to, that this examination be made at the expense of Nowata county. Of course I know you want to keep expenses down all you can, but at the same time the defendant would have been entitled to file an affidavit and ask attendance of three witnesses at the expense of the county. We did not do that. This would not be a great expense to the county, and yet an expense of $40 or $50 is something the defendant cannot pay at this time, and we will make an affidavit to that effect. We would like to have the order made, 'at the expense of the county,' and we feel as though we would be entitled to it and ought to have it. Unless you do, it will be impossible for us to have this examination.

"By the Court: The court cannot modify that order. There is no provision of law for the state paying for an examination of this kind. The court has given the defendant permission and has made an order that the defendant may have the right to have two physicians make an examination of the girl, and that order would be made in favor of the state as well as the defendant. If the state didn't have a witness who had already made an examination, the court could not change the order to require this examination to be paid for by the state.

"By Counsel for the Defendant: Well, of course I do not mean to argue the point with the court, but it seems to me in a case of this kind it might be amended. Of course, I leave the matter with the court. Does the court overrule (interrupted by the court)—

"By the Court: I overrule the request for a modification of the order.

"By counsel for Defendant: Give us an exception.

"Thereupon counsel for the defendant starts his opening statement to the jury on behalf of the defendant:

"By Counsel for the Defendant: May it please the court, and you gentlemen of the jury:

"By the Court: Just a minute. Let the record further show the defendant is now offered an opportunity to have any reputable physician that he may desire to make an examination of the prosecuting witness, Inez Greenleaf, with a view of preparing himself to testify in this case.

"By Counsel for the Defendant: Let the record show, if the court has no objection, that the defendant does not accept that opportunity because of the fact that he is unable to pay the expenses of the examination."

In *Walker v. State,* 12 Okla. Cr. 179, 153 Pac. 209, in an opinion rendered by this court on the 11th day of December, 1915, it was held to be manifest abuse of discretion on the part of the trial court to refuse to make an order for a physical examination of the prosecutrix by a competent physician upon proper demand by the defendant in a case of rape of this character. The decision of the court in that case was based upon the peculiar circumstances of the case, and the fact that the proof of the *corpus delicti* in that case was of a very doubtful and inconclusive character. However, it was established to be a matter within the discretion of the trial court, and a reversal, therefore, upon this ground can only be had where there is shown to be a manifest abuse of discretion. The facts upon which the court reversed the Walker Case are as follows:

"It appears from the record that when the case was called for trial the defendant demanded that a physical examination of the prosecutrix by a competent physician should be made, which demand was denied by the court, and exception allowed. It will be seen from this statement of the testimony that the evidence adduced to establish the *corpus delicti* is of a very doubtful and in-

conclusive character; it consists exclusively of monosyllable answers by the child to leading and suggestive questions propounded by the county attorney, and on her cross-examination she unhesitatingly states that her uncle Oliver Walker promised to buy her some new shoes and her uncle Billy Brady promised to buy her a new dress if she would tell this story to the grand jury, and that before the trial they told her again they would get her a new dress and shoes if she would tell this story. In view of the unsatisfactory character of the testimony of the child witness and the fact that there is a direct conflict in her testimony and that of the only other witness produced by the state we think that the court erred in refusing the defendant's demand that a physical examination of the child be made by a competent physician. While 'any sexual penetration, however slight, is sufficient to complete the crime' (section 2416, Rev. Laws 1910), there must be proof of some degree of entrance of the female organ, and the practice seems to be not to permit a conviction in those cases in which it is alleged violence was done, without medical proof of the fact, whenever such proof is attainable. If the private parts of the defendant entered those of the child, then only seven years of age, as the testimony of the state tends to show, the marks of penetration would be permanent and would be the best evidence of the actual commission of the crime charged."

How different are the facts of that case from the facts in this. In that case the state produced no physician who had made a physical examination of the prosecutrix. In this case a physical examination was had within 48 hours of the time of the commission of the alleged offense by two reputable physicians of Nowata county in the presence of three women, and the examination thus had clearly and convincingly corroborated the

15-14

testimony of the prosecutrix as to the commission of the offense.

The prosecutrix in this case is a girl 12 years of age, and her answers show her to be of unusual intelligence for that age, while in the Walker Case the prosecutrix was at the time of testifying some three years younger and of a lesser degree of intelligence. In this case there was no refusal to make an order that the prosecutrix be examined, although two reputable physicians had theretofore examined her, but the error complained of is that the court refused to allow such an examination to be made at the expense of Nowata county. In this ruling we think the trial court did not abuse its discretion. It was known to the court at that time that an examination had already been made by two reputable physicians at the expense of Nowata county, and even admitting that the defendant was unable to pay for another examination, there are no facts shown in this record indicating any such examination was necessary, or that the result of such an examination would be in any way different from that obtained by the two physicians who had already testified. It is our opinion, therefore, that this assignment of error is without merit.

Among other grounds assigned for a new trial by the defendant was the misconduct of the county attorney in asking defendant improper questions which tended to bring to the attention of the jury matters which were collateral and not proper for their consideration. An examination of the record discloses that the trial court very promptly sustained objections to the questions asked, but it is no doubt true that persistence of the county attorney or other prosecuting officer in asking improper

questions, where it is clear that the purpose is to prejudice the minds of the jury by suggesting improper matter for their consideration, may amount to such missconduct as to require the granting of a new trial, and in some cases judgments of conviction have been reversed by this court solely on account of such misconduct. *Pickrell v. State,* 5 Okla. Cr. 391, 116 Pac. 957; *Watson v. State,* 7 Okla. Cr. 590, 124 Pac. 1101; *Rogers v. State,* 8 Okla. Cr. 226, 127 Pac. 365; *Scott et ux. v. State,* 13 Okla. Cr. 225, 163 Pac. 553, and others.

But it is equally true that the control of examination of witnesses is under the direction of the trial court, and before this court would be authorized to reverse a judgment of conviction solely upon the ground that there had been alleged misconduct on the part of the prosecuting attorney in examining witnesses, where the evidence is as clear and convincing as in this case, there must have been such a flagrant abuse of discretion on the part of the trial judge in overruling motion for a new trial on that ground as to have amounted clearly to the prejudice of the substantial rights of the defendant. We are not satisfied or convinced after an examination of the record in this case that any such prejudice resulted to the defendant. The trial judge ruled promptly and correctly when objections were made, and instructed the prosecuting attorney to abandon the objectionable line of examination. The county attorney did not persist in repeating the objectionable questions after the court sustained the objections. A question or two was asked the defendant which called for manifestly incompetent answers, but this court would not be authorized to reverse this judgment of conviction merely on this ground, where the evidence of guilt is so convincing and the punishment was

not prescribed by the jury. We are firmly of the opinion that the record does not establish that the defendant was prejudiced by any ruling of the trial court in this respect, or that the misconduct complained of was so persistent or malicious as to require a reversal of the judgment.

After a careful examination and consideration of this entire record, we find no error therein sufficient to authorize a reversal of this judgment. The judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.