## CHARLES A. MERRITT v. STATE.

No. A-8557. Sept. 22, 1933.
(25 Pac. [2d] 340.)

David Tant, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J. Plaintiff in error, hereinafter called defendant, was convicted in the district court of Oklahoma county of the crime of robbery with firearms, and his punishment fixed at imprisonment in the state penitentiary for 20 years.

On May 24, 1929, one Charles Vowell was conveying $75,000 from the Federal Reserve Bank to the American-First National Bank, where he was employed as messenger. He was in a Ford coupe driven by a negro driver, Creed Harper. The coupe came to a stop on Third street, entering Robinson, and, as it did so, a car immediately behind this coupe stopped, a man jumped on the south

running board of the coupe, shot Vowell in the shoulder, and at the same time another man on the north side of the car pointed a pistol at Harper. One of them seized the canvas sack containing the money, threw it into the car in the rear of the coupe, and both got in and drove rapidly away. There was another person in the car in which the money was placed and in which the robbers made their escape. Defendant was not apprehended until March, 1932, at which time he was living at New Orleans, La., under an assumed name.

Neither Vowell nor Harper was able to identify defendant positively. On this point Vowell testified:

"* * * Q. I will ask you to state whether or not the man in the back seat, if you have seen him since that time? A. Why, I saw a person that resembled him. Q. Who was that? That was Mr. Merritt. * * *"

A Mr. Bond, who at the time was driving a delivery car, turned from Robinson into Third street just as the robbery took place, and upon the question of identity testified:

"* * * Q. Did you see the man in the back seat of the car? A. Yes, sir. Q. What did he have, if anything? A. Well, he had a gun. Q. Did you see the gun in his hand? A. Yes, sir. Q. Do you see that same man here now? A. Yes, sir. Q. Where is he? A. Sitting right there at the desk (indicating the defendant, Charles Merritt.) * * *"

Further, the state called Robert B. Thompson, who testified he and one "Cowboy" Hayes, one "Rusty" Gibson, and the defendant formerly lived at Kansas City and knew each other well. That witness, with his foster father, Hayes, Gibson, and defendant were connected with the robbery; that witness ascertained the time and man-

ner of the bank messenger transporting the money from the Federal Reserve to the other bank, and otherwise aided and assisted in planning and preparing for the robbery; that witness and his foster father, C. W. Thompson, rented a place on West Twenty-Second street, and that Gibson rented an apartment on East Eleventh; that they discussed and made plans for the robbery, in which it was agreed Gibson was to drive the robbery car and defendant and Hayes were to accompany him and to participate; that defendant and Gibson stayed at the place witness had rented the night before the robbery; that immediately after the robbery Gibson, Hayes, and defendant went to the Twenty-Second street place, and after the robbery, witness also went to this place, found them there, armed, and witness, at their direction, went to the car, procured the money, the proceeds of the robbery, which was in a canvas sack, and with Hayes carried it into the house, and he and Hayes counted it while defendant stood by and watched the count; that they paid $2,500 for the use of the car, and divided the remainder of $72,500 into four equal parts, one of which went to Gibson, one to Hayes, one to witness, and one to defendant. The testimony of the accomplice Thompson fully sustains the state's case, and is amply corroborated by other testimony. Defendant interposed the defense of alibi, but admitted he was at the place on West Twenty-Second street the day before the robbery, while on his way from St. Joseph, Mo., to Dallas, Tex. There are various items of testimony not mentioned in this summary.

The brief of plaintiff in error is signed by him in person, and he predicates it by stating that it is not his intention "* * * to ask for a reversal of the case, but to ask for a commutation of the sentence. * * *" This is followed by argument in the nature of a plea for clemency,

and concludes by asking this court to reduce the punishment assessed to the minimum of five years' imprisonment.

In the light of the record, there can be no doubt of defendant's active participation in this crime and his profiting from the fruits of the crime. This court has held frequently that it is not within its province to commute or extend clemency. The power of this court to modify a judgment is fixed by law, and is exercised only as a judicial act where justice requires. Section 3204, Okla. Stat. 1931; Anthony v. State, 12 Okla. Cr. 494, 159 Pac. 934; Oliver et al. v. State, 55 Okla. Cr. 7, 23 Pac. (2d.) 718. Certainly a crime of the gravity of the one committed in this case, under the circumstances shown, calls for severe punishment, and the punishment assessed is not excessive.

The case is affirmed.

DAVENPORT and CHAPPELL, JJ., concur.