# JAMES M. HAYS v. STATE.

No. A-8934.   May 1, 1936.
(57 Pac. [2d] 644.)

{Ross Rizley and D. E. Hodges, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Oklahoma county of robbery with firearms and was sentenced to serve a term of 50 years in the state penitentiary.   This charge grew out of the robbery of a messenger of First National Bank of Oklahoma City, September 22, 1933.   The testimony is that the actual robbery was perpetrated by defendant, one Charles A. Merritt, and one

Rusty Gibson and that C. W. Thompson and Robert B. Thompson aided and assisted in the robbery, though not present. All were informed against. Robert Thompson became a state's witness and was granted immunity. C. W. Thompson was tried and acquitted; Merritt was convicted and on appeal to this court the conviction was affirmed. Merritt v. State, 55 Okla. Cr. 87, 25 Pac. (2d) 340. Gibson was arrested, but broke jail and escaped, and has not been apprehended. In the robbery, Charles Vowell, the bank messenger, was shot in the arm, and the testimony is that defendant fired the shot. A rather full statement of facts is made in the Merritt Case, supra, and we deem it unnecessary to make a further recital here. The evidence for the state fully sustains the judgment.

The main proposition argued is error occurring at the trial. This contention includes several items, particularly improper cross-examination of defendant on incompetent and immaterial matters and prejudicial remarks of the trial judge. In his testimony, defendant gave his life history rather fully, telling in detail of his having been in the alcohol business with C. W. Thompson and Robert Thompson at Kansas City for many years and in distributing liquor and alcohol in Oklahoma and adjoining states and of his association with Merritt and of his having been arrested on two occasions as a suspect in robberies, one the Home Trust Company robbery at Kansas City, the other a robbery of a picture show at Atchison. He denied any acquaintance with Gibson. His defense was alibi. On this point he testified he was in the state of Kansas at the time of the robbery and first learned of it the day following, from a newspaper; that he immediately sought out Merritt in Chicago to make inquiry with reference to it and was advised by Merritt that he, defendant, "was in no danger." He returned to Kansas City

and then fled to Seattle, where he resided, under a fictitious name, some two years. He also testified of the ill will of Robert Thompson and of the circumstances from which it arose. The state was given considerable latitude on cross-examination.

Some of the items and the objections thereto are: When asked on cross-examination concerning the picture show robbery at Atchison, he stated that the chief of police had a personal grudge against him. This was a prelude to several questions, objections, and remarks; among them, the court said: "The witness opened the door by saying these officers had a personal grudge against him."

When questioned as to the Home Trust Company robbery, counsel objected and the court said: "If he was there, he can say so, and if he wasn't, he wasn't."

It was drawn out on cross-examination that Merritt had been convicted for this robbery and was in the penitentiary at McAlester. Defendant was asked if he had Merritt as a witness; on objection, the court said: "I permitted the defendant to go into his entire life over the objection of the prosecution, and I am going to let the proscution examine on all phases of his life. Proceed." On further objection, the court, referring to Merritt, said: "It is a matter of common knowledge here that he is in the penitentiary, of course and * * *." These are the principal items under this assignment.

Counsel argues these statements indicated prejudice and influenced the jury in returning a verdict against defendant, citing State v. Coella, 3 Wash. 99, 28 Pac. 28; Reed v. State, 5 Okla. Cr. 365, 114 Pac. 1114; Stuedle v. State, 6 Okla. Cr. 494, 119 Pac. 1022; Hicks v. United States, 2 Okla. Cr. 626, 103 Pac. 873; Shepherd v. State, 17 Okla. Cr. 630, 192 Pac. 238; Chambers v. State, 28

Okla. Cr. 156, 229 Pac. 646; State v. Bowker, 26 Or. 309, 38 Pac. 124; Trimble v. State, 32 Okla. Cr. 175, 240 Pac. 329, 330, and other authorities.

It is a general rule that a defendant, by detailing his life history, opens a wide field of cross-examination as to previous occupation, his associates, and his reputation.

The fact of the conviction or acquittal of a codefendant is generally held incompetent in other states. No case has been called to our attention in which this question has been before this court. Before reading his instructions, the trial court made a statement to the jury, cautioning them against giving any consideration to any remarks by counsel or by the court with reference to the trial or the conviction of any other person charged with the crime for which defendant was on trial. We are of the opinion it would have been better if the trial judge had refrained from several of his statements, for, as this court said in Trimble v. State, supra:

"It is an excellent rule for trial judges, in the trial of criminal cases, to rule upon objections presented without comment, or, if the trial judge deems it proper to explain his ruling, the explanation should be so worded that the jury should not be informed of the opinion of the judge as to the guilt or innocence of the defendant or the credibility of any witness who may testify."

Surely, in the instant case, after defendant testified to his being suspected and detained for other robberies, of his having been engaged in an unlawful business with the Thompsons, of his association with Merritt, and of his interview with him only two or three days after the crime and of the implied promise of Merritt to protect him and of his flight and concealment and of his knowing Merritt was in the penitentiary, within reach of process, it was not improper to inquire of him, on cross-examina-

tion, if he had procured his attendance as a witness. Nor, under the circumstances, was it improper for the state to show his conviction, but while this might properly have been shown, it was improper for the trial judge to make the statement that it was common knowledge he was in the penitentiary.

When an accused, on trial for a crime, voluntarily testifies in his own behalf, he thereby subjects himself to the same rules of cross-examination as any other witness, and matters of interest and his connection and relation with those who committeed the crime may be shown. Upon an examination of the entire record, we are satisfied defendant had a fair trial, that his guilt is conclusively proven, that the punishment is not excessive, and the errors complained of do not warrant this court in interfering with the judgment.

The case is affirmed.

DAVENPORT and DOYLE, JJ., concur.