## OTIS GREEN v. STATE.

No. A-9646.  Sept. 18, 1940.
(105 P. 2d 795.)

Amos T. Hall and Jesse O. Dedmon, Jr., both of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J.  This is an appeal from the district court of Tulsa county, wherein Otis Green was convicted, and in accordance with the verdict of the jury was sentenced to serve a term of ten years in the state penitentiary for the crime of assault with intent to kill by intentionally and wrongfully shooting one Edward Jennings, alleged to have been committed in Tulsa county on the 6th of January, 1939.

The facts established by the undisputed testimony of three witnesses for the state are as follows: The alleged crime occurred in the city of Tulsa, at 112 North Greenwood, known as Benton's Place, the building faces east, the front room is occupied as a cafe, the next room, kitchen, and next back a room where pokeena is played.  In this room was a large table used to play pokeena, which runs north and south and long enough for twelve people to play at the game.  "Pokeena" is a game something like bingo, the only difference is in pokeena they use cards and in bingo they use numbers.  The defendant had been running the game there for several months.

Edward Jennings and his wife, Estella, and several others, were playing the game, about midnight, when Es-

tella got into an argument with the defendant as to whether or not she had won; defendant said she had not won, and pointed his finger at Edward and said, "That goes for you, too." Jennings said, "You pull off your gun and I will fight you," then pushed his board in, arose from the table, turned to the kitchen door and the defendant fired two or three shots at him; one took effect in the back of the head, another in the back of his arm, near the elbow. He fell to the floor unconscious and about five minutes later was removed to the Municipal Hospital in an ambulance.

The complaining witness, Jennings, in substance testified that on January 5th, after getting off work at 6 o'clock that evening, he went over to Benton's Cafe to eat; after staying a while he went to a show with his wife; after the show he came back to Benton's place; his wife went in and he went to a drugstore to get some cigarets; then returned to Benton's place, and there with his wife and others engaged as a player in the pokeena game. About midnight his wife got in some kind of argument with Otis Green as to whether or not she had won. He told his wife to hush, but did not say anything to Green; she hushed, and Green pointed his finger at him and says, "That goes for you, too," and he said, "You pull off your gun and I will fight you, but did not say any more to him;" that he pushed his board in and turned to go out, and he was shot in the back of the elbow and in the back of the head; that he was opening the kitchen door when he was shot; that he did not see Green shoot him and did not know how many shots were fired; that he did not have a gun or a knife, and never had any trouble with Green before.

Estella Jennings testified that she went into Benton's Pleasure Parlor about 9 o'clock; later her husband came in; that they were all playing pokeena; another girl said

"pokeena" and she said "pokeena" too, so Otis Green started checking the cards, and he said the ten of hearts is not out, and she said, "If it is not out, it is all right." Otis kept on arguing and her husband told her to shut up and she shut up. Otis Green said to her husband, "That goes for you, too," and shook his finger at him. Edward says, "If you pull off your pistol I will fight you," then he pushed his board in, got up, and walked away and just as he went to go out the door Otis Green commenced shooting and shot two or three times; that her husband had his back to him when he shot him; that everybody started running out and she went home and told her mother-in-law that Edward had got shot down.

Izola White testified that she was at Benton's Pleasure Parlor, playing pokeena; Edward Jennings, his wife, Estella and several others were there. Otis Green was running the game and has been running it since last spring. They were all playing pokeena. A girl, named Jean, pokeenaed. Estella Jennings said, "The ten of hearts is out, it is in my hand," and threw her board out in the middle of the table and said "Check me down." Otis said: "Keep your damned boards out of the middle of the table. The ten of hearts is not out because it is on my board." Estella says: "What are you going to do about that? Don't nobody give a damn about you." Otis said: "I don't give a God-damn about you." At that time Jennings says, "Don't anybody give a God-damn about you." Green said: "That goes for you", and Edward got up, pushed his board in and says: "You play with your pistol, shoot niggers, kill niggers; now kill me." About that time Otis pulled his gun out, and Edward started towards the door. She hollered, "Otis, don't do that." Edward was facing the door when Otis started shooting. The door opens in and Edward hit the facing and Otis shot once after he fell.

There was no testimony offered on the part of the defendant.

The first assignment of error argued is: "The court committed error in its failure to instruct the jury on the law of self-defense."

Upon the record before us counsel for plaintiff in error have not properly raised the question.

Only prejudicial errors raised by exceptions reserved require a new trial, and it is only when we are satisfied that the verdict is contrary to law, or to the evidence, or that injustice has been done, that we are permitted to reverse a conviction whether or not an exception has been taken in the trial court.

The instructions given by the court submitted the issue of assault with intent to kill as defined by Penal Code, sec. 1873, 21 Okla. St. Ann. § 652, and submitted the included offense of assault with a dangerous weapon with intent to do bodily harm, without justifiable or excusable cause, as defined by Penal Code, sec. 1870, 21 Okla. St. Ann. § 645.

Other instructions fully and correctly defined the degree of evidence required in order to entitle the state to a verdict of conviction. No objections were made or exceptions taken to the instructions given by the court.

It is also urged that the court erred by refusing to give instructions requested by the defendant.

The Code of Criminal Procedure provides the method of procedure for requesting instructions, and a defendant may submit to the court written instructions with the request that they be given, and how objections and exceptions shall be reserved. Secs. 3057, 3079, 22 Okla. St. Ann. §§ 831, 856.

It has been repeatedly held by this court that it is the duty of counsel for a defendant, where he is of the opinion that additional instructions should be given, to reduce them to writing, and request that they be given. If he fails to do so a conviction will not be reversed, unless the court is of the opinion, in the light of the entire record, and instructions of the court, that there was a failure to instruct upon some material question of law, and that the defendant has been deprived of a substantial right. Lee v. State, 67 Okla. Cr. 283, 94 P. 2d 5; Pulliam v. State, 61 Okla. Cr. 18, 65 P. 2d 426; Adams v. State, 62 Okla. Cr. 167, 70 P. 2d 821; Russell v. State, 17 Okla. Cr. 164, 194 P. 242; Williams v. State, 12 Okla. Cr. 39, 151 P. 900.

In the instant case the court was entirely correct and the jury could not have been misled by the instructions given.

Complaint is also made of alleged improper conduct of the assistant county attorney in his closing argument to the jury, in that he made frequent reference to the defendant as a "mean negro," and stating to the jury, "Here you are dealing with a mean negro," and it argued that it is clearly evident from the assessment of the maximum punishment, the argument of counsel was highly inflammable and calculated to arouse passion and prejudice.

The record here recites:

"Counsel for defendant: We object to that line of argument for the reason it is highly prejudicial. The Court: I will overrule the objection. The defendant at this time moves the court to admonish the jury not to consider the same. The Court: Overruled. And the defendant further at this time moves the court to declare a mistrial for the reasons assigned in the previous motion. By the Court: Overruled. Exceptions."

Upon the record before us the question is not properly raised.

This court in Payne v. State, 21 Okla. Cr. 416, 209 P. 334, held that:

"Where the record is incomplete touching upon alleged disparaging remarks made in the closing argument, this court will presume that the trial court ruled correctly."

Even if it were to be conceded that the remarks were somewhat outside the pale of legitimate argument, it does not affirmatively appear that counsel abused his privilege, or that the court committed error in overruling the defendant's objections thereto.

Finally it is insisted that the punishment imposed is excessive.

Plaintiff in error's brief concludes as follows:

"Whether the errors complained of are sufficient to work a reversal is for the court to decide, but we do strenuously urge that if the court decides that our argument for reversal is not well taken, justice demands that the sentence be modified and the punishment materially reduced, and we do so pray."

The record shows the judgment was rendered February 28, 1939. Thereupon the defendant gave notice of his intention to appeal, and asked the court to fix the time and was given 30, 10 and 5 days for a case-made. It is further shown that the defendant filed his application asking the trial judge to order a case-made at the expense of the county and in support of the same testified that he was without any money to pay for a transcript and had no relatives or friends able to supply the necessary funds with which to perfect his appeal. Thereafter, on March 28th, the trial judge ordered the court reporter to prepare a transcript of the record proper, including a transcript of the testimony taken in the case at the expense of Tulsa county, and granted an additional extension of 30 days for making and serving the case-made.

On the hearing of the motion for a new trial, the record is as follows:

"Mr. Simms: Then in 1921, he was convicted of the crime of forgery and sentenced to 18 months. Then in 1927, he was charged with assault with intent to kill, no disposition is given of it. Then, on June 28, 1932, he was convicted of first-degree manslaughter and given a sentence of four years in the State Penitentiary at McAlester. I think that about covers his activities up to the present time. The Court: Well, that does not influence this court in the matter. I don't have the authority to cut down the sentence, even if I thought it ought to be cut down, so I won't go into that matter."

We may say in passing that courts take judicial knowledge of their own records and proceedings. In the case of Otis Green v. State, 54 Okla. Cr. 450, 23 P. 2d 506, the defendant charged with the crime of murder was convicted of manslaughter in the first degree. On appeal the conviction was affirmed.

The power of this court to modify any judgment appealed from by reducing the sentence is fixed by law, and is exercised only as a judicial act in furtherance of the ends of justice. Code of Criminal Procedure, section 3204, 22 Okla. St. Ann. § 1066; Merritt v. State, 55 Okla. Cr. 87, 25 P. 2d 340; Anthony v. State, 12 Okla. Cr. 494, 159 P. 934; Fritz v. State, 8 Okla. Cr. 342, 128 P. 170.

Before this court is authorized to modify a judgment of conviction by a reduction of the punishment imposed, it must clearly appear that the punishment imposed is excessive, or probably the result of passion and prejudice on the part of the trial jury, or else that some substantial error of law has occurred at the trial, prejudicial to the defendant in the amount of punishment imposed. Barnett v. State, 25 Okla. Cr. 230, 219 P. 726.

In our opinion the case before us is not one warranting our interference.

While the defendant was given the maximum punishment, we find no reason in the record which would justify us in modifying the judgment by reducing the punishment imposed.

Upon consideration of the entire record, we find no substantial error and the conclusion is reached that the defendant had a fair and impartial trial.

From what has been said, it follows that the judgment of the trial court should be affirmed. It is so ordered.

BAREFOOT and JONES, JJ., concur.