## LILLIAN WELDRIDGE BRADLEY v. STATE.

No. A-10777.　Dec. 10, 1947.

(187 P. 2d 677.)

Harold McArthur, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

BRETT, J. This prosecution arose out of the admitted killing of Walter Bradley, in Tulsa county, Okla., on

December 19, 1944, by the defendant Lillian Weldridge Bradley, common-law wife of the deceased, Bradley. In the information the defendant was charged with murder, tried, convicted of manslaughter in the first degree, and sentenced to 25 years in the penitentiary. The proof shows that she shot Walter Bradley, the deceased, five times with a .38 calibre pistol; once at the top of the head on the right side, again on the back side of the head at the base of the brain, another time at the back of the neck between the fifth and sixth vertebrae, a fourth time at the back of the left shoulder, and a fifth time at the right temple; from which wounds he instantly died. All of these wounds were inflicted while the deceased was lying in bed with the covers pulled up above his shoulders and with his face to the wall. The defendant contended that they had been quarreling and that the deceased threatened to kill her as he had killed Charlie York. She said that she was scared that if he got the gun he might kill her. She said that they both reached for the gun, under his pillow; that she beat him to it, jumped up and started firing the pistol. To the contrary, the evidence of disinterested witnesses who were called to the scene of the killing immediately thereafter, said the bedcovers disclosed no evidence of any struggle, the sheets and covers were undisturbed except for the blood upon them. The defendant admits that both of them had been drinking some time before the killing. The defendant testified that the deceased had threatened to kill her on numerous other occasions, but failed to do anything about it; not even attempting to get his gun except on this fatal occasion.

The evidence of the defendant's guilt is conclusive. No complaint is made of substantial errors occurring at the time of the trial. In this connection, counsel for the de-

fendant says: "Counsel is not unmindful that under the evidence in this case there are no substantial errors which are prejudicial enough to warrant a reversal of the cause." However, he contends for modification of the sentence herein imposed upon the proposition that counsel for the state propounded a question on cross-examination regarding a fight in which the defendant was engaged subsequent to the charge upon which she is being tried, and says that that question influenced the verdict of the jury. This contention is based upon the following portions of the record, to wit:

"Q. Let me ask you this question. Isn't it true that approximately six months ago, since the time you have been charged with this crime here, that you have got in an argument and fight with some man, at approximately 2 o'clock in the morning, and you went to Dr. Motley's office with a partially severed jugular vein, isn't that true? Mr. McArthur: We object to that as incompetent, irrelevant and immaterial. A. I did, but— The Court: Overruled, she has answered."

The foregoing question is clearly incompetent and the objection thereto should have been sustained and the jury admonished by the court to give no consideration whatsoever to the question and its implications, but, it is conceded by the defendant that at most it amounts to nothing more than a technical error. Upon this technicality she seeks to obtain a modification of judgment and sentence from 25 years to a shorter term. The answer to this contention may be found in Harkins v. State, 14 Okla. Cr. 440, 172 P. 469, wherein this court said:

"The fact that the county attorney, on cross-examination of the defendant, asked a few questions which called for incompetent answers, does not of itself establish prejudicial error."

In the body of the opinion, of the above case, the court, after laying down the general proposition that questions on cross-examination asked for the purpose of prejudicing the minds of the jury by suggesting improper matter for their consideration, may amount to such misconduct as to require the granting of a new trial or the reversal of the case, stated the exception to the rule as follows:

"A question or two was asked the defendant which called for manifestly incompetent answers, but this court would not be authorized to reverse this judgment of conviction merely on this ground where the evidence of guilt is so convincing * * *. We are firmly of the opinion that the record does not establish that the defendant was prejudiced by any ruling of the trial court in this respect, or that the misconduct complained of was so persistent or malicious as to require a reversal of the judgment."

See Murphy v. State, 72 Okla. Cr. 1, 112 P. 2d 438, 455, wherein this court said:

"It is not error alone that reverses judgments of conviction of crime in this state, but error plus injury, and the burden is upon the plaintiff in error to establish to this court the fact that he was prejudiced in his substantial right, by the commission of error."

See, also, Moncrief v. State, 53 Okla. Cr. 308, 11 P. 2d 538, 539, wherein this court said:

"While the cross-examination went too far and was improper as to some of the questions, yet, in the light of the whole record, we cannot say that it is such an error as requires a reversal of the case."

That is precisely the situation confronting us in the case at bar. A complete answer to the contention herein, upon which modification of the judgment and sentence is sought, is to be found in part of the language in Harris v. State, 14 Okla. Cr. 489, 173 P. 958, 963, as follows, to wit:

"The alleged errors are technical, but this court is frank to admit that certain things occurred during the trial of this case which should not have occurred; but the doctrine has been thoroughly established that where evidence on the part of the state makes out a case of cold-blooded murder, and under defendant's own testimony he is at least guilty of manslaughter in the first degree, and the conviction is only for manslaughter in the first degree, the judgment of conviction under such circumstances will not be set aside, although certain technical errors occurred during the trial, the defendant being deprived of no constitutional or statutory right. Fitzsimmons v. State [14 Okla. Cr. 80], 166 P. 453. * * *

"If there is any miscarriage of justice in this case, it was because the jury should have returned a verdict of guilty of murder instead of manslaughter.

"* * * where the evidence shows that the defendant killed the deceased, an unarmed man, by shooting him six times, once in the side and five times in the back, merely because he was afraid of him and apprehended that he might get a shotgun and shoot him, it will be useless for him to appeal and ask a reversal of a manslaughter conviction upon technical grounds."

A situation similar to the foregoing is presented in the case at bar. Here, as in that case, the evidence on the part of the state, in our opinion, makes out a case of cold-blooded murder. Under the defendant's own testimony she is at least guilty of manslaughter in the first degree. Where, as here, the defendant is not deprived of any constitutional or statutory right, but bases her contention for modification upon one technical error, standing alone, we do not believe we would be justified in the slightest in granting the modification herein sought to be obtained. Therefore, in view of the defendant's unquestionable guilt, in light of the whole record, the ends of justice would not permit a modification of the judgment and sentence herein.

While under the provisions of Title 22 O. S. A. § 1066 we are authorized to modify judgments appealed from, this court has repeatedly held that such modification will be exercised as a judicial act only where justice requires. Merritt v. State, 55 Okla. Cr. 87, 25 P. 2d 340; Anthony v. State, 12 Okla. Cr. 494, 159 P. 934; Oliver et al. v. State, 55 Okla. Cr. 7, 23 P. 2d 718; Bright v. State, 76 Okla. Cr. 67, 134 P. 2d 150, 154, wherein this court said:

"It is not often that this court will modify a judgment and sentence, and it is only when the ends of justice demand that it will be done."

We are not confronted in the case at bar, with a situation where the ends of justice demand a modification of the judgment and sentence. Therefore, the sentence is affirmed.

BAREFOOT, P. J., and JONES, J., concur.