## J. H. BYNUM v. STATE.

No. A-6171.   Opinion Filed May 12, 1928.
Rehearing Denied July 21, 1928.
(268 Pac. 993.)

Whiteside & Snodgrass, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the county court of Jackson county on a charge of having the unlawful possession of whisky and was sentenced to pay a fine of $500 and to serve 6 months in the county jail.

At the time charged two deputies of the sheriff's office, having information that defendant was in the city of Altus with an automobile of whisky, went to the Orient Hotel and discovered a car parked there answering the description of the car they were looking for. It had side curtains with isinglass windows. No one was present, the officers looked in, and one of them testifies he smelled whisky and saw three cases sitting in the car, one of which was open. It was found to contain 31 jars of corn whisky. They waited near the car; soon defendant, another person, and the negro porter came out of the hotel. The evidence is that the officers questioned defendant, and he at first denied ownership of the car, and then denied that there was any whisky in it; then he asked the officers if they were county or federal men, and, on being informed they were county officers, he stated, in substance, that, to be honest with them, it was his car and his whisky. The evidence is not entirely clear whether he was arrested before or after he made this

statement. He was taken to the jail and the car seized. Defendant did not take the stand and offered no evidence.

Before entering upon trial, defendant filed a motion to quash the information for the reason the evidence in support of it was obtained by an illegal search. This, of course, presents no reason for quashing the information. Just the extent of the investigation made by the officers to discover the contents of the car or just what took place was not fully developed either on direct or cross-examination. One of the officers testified:

"* * * Q. Had you seen the whisky at the time? (Referring to the time of the conversation with defendant). A. Yes, looked in the car hadn't opened the door.

"Q. Looked in? A. Looked in and saw three cases sitting there with a blanket or something over them. * * *

"Q. How did you know it was whisky? A. I smelled it.

"Q. When he came out you arrested him without a warrant for misdemeanor on suspicion that that was his whisky and his car? A. Yes. * * *

"Q. Arrested him, took charge of him then charge of his car? A. After he told me he didn't have any car. * * *

"Q. The curtains were up on the car? A. Yes.

"Q. Closed all around? A. One of those isinglass curtains. * * *

"Q. You had decided that the car had whisky in it before he came out? A. Yes, sir.

"Q. Had you opened the door of the car? A. No, sir.

"Q. Had you pulled the curtain back? A. Yes, I think I did. * * *

"Q. Did you see any spilled out of the car? A. Some was spilled, if I'm not mistaken one jar was broken. * * *

"Q. Did you have conversation with defendant, Bynum, at this time? A. After he came out to the car.

"Q. What was that conversation? A. We arrested Bynum and asked him if he had whisky in the car, and he told me he did not, and I told Southall to take him on up to the sheriff's office, and I would get this car of whisky. When I walked around the car to get in, couldn't get in, so I went around to the other door and Bynum was standing there. He asked me, says, 'Are you county or federal?' says, 'to be honest with you, this is my car,' and said it was his stuff. * * *"

Counsel for defendant, arguing his objection before the court, construed the evidence in this way:

"* * * I can't comprehend—I would have anticipated that there would be some purported search warrant or some purported waiver of it, but the witness of the state has just testified that he went up and looked in the car and saw that there was corn whisky there before he ever saw the defendant that night, had seen him some weeks before that. When he came out of the Orient Hotel, the defendant said it wasn't his, and that he started to get in the car without a search warrant; that he couldn't get in the north door, and that he went around to the south door, and that this defendant at that time had not waived search warrant. * * *"

There is, of course, no contention but that defendant had some 16 gallons of corn whisky in his car. The contention is that the evidence was procured by an unlawful search. The case is somewhat close, but on appeal from a conviction to this court the presumption is that the judgment is correct. The burden

is on a defendant to show the commission of some prejudicial error which prevented a fair trial or which deprived him of some substantial right, before this court is warranted in reversing a case. It has been held that the mere looking into an automobile is not a search, and that the presence of whisky may appear by the sense of smell as well as the sense of sight. Sands v. State, 36 Okla. Cr. 55, 252 P. 72, and cases cited; Bullington v. State, 38 Okla. Cr. 214, 259 P. 876.

It is also well settled that, where a person denies that possession or ownership of property, he will not be heard to complain that it was searched illegally. White v. State, 33 Okla. Cr. 428, 244 P. 450; Williams et al. v. State, 35 Okla. Cr. 171, 249 P. 433; Penrod v. State, 38 Okla. Cr. 46, 258 P. 1052.

Under the record in this case, it was not an unlawful search for the officers to look through the curtains into the parked automobile, and, if they there saw and smelled whisky, such knowledge was not obtained by an unlawful search.

When defendant admitted ownership of the car and the whisky, the officers then had legal knowledge of the commission of a misdemeanor in their presence, and his arrest without a warrant was legal and a subsequent search of the car not an unlawful search. Miles v. State, 31 Okla. Cr. 4, 236 P. 907.

No reason requiring a reversal is made to appear.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.