## DON NOWLIN v. STATE.

No. A-9416. Oct. 21, 1938.

(83 P. 2d 601.)

166

W. H. Cooper, of Anadarko, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is from a judgment of conviction for the crime of grand larceny, alleged to have been committed in Blaine county, on or about the 30th day of November, 1933.

The plaintiff in error, Don Nowlin, and Edward Peek were jointly charged with the theft of approximately 900 pounds of picked and snapped cotton in the seed, of the value of $22.50, the personal property of Clarence Hoffman.

A severance was granted. Upon his separate trial the jury returned their verdict, finding the defendant, Don Nowlin, guilty of grand larceny as charged in the information, but were unable to agree upon the punishment. His motion for new trial was denied on May 8, 1937, and he was sentenced by the court to serve a term of 15 months in the penitentiary at Granite.

It is assigned as error that the verdict of the jury is contrary to the law and the evidence, and is not sustained by sufficient evidence.

The evidence for the state shows that, on the date alleged, Clarence Hoffman was living on a farm about three miles northeast of Greenfield, and that evening left a wagon load of cotton in the field, about half a mile from his house. The next morning, Thanksgiving Day, he found about one-half of the load of cotton was gone. That he called his father-in-law, W. T. Cooper. They found car tracks leading from the highway through a gate to the cotton wagon. The tracks of the rear tires were alike;

the tracks of one front tire was that of an old casing, the other of a newer one. That some of the footprints around the wagon and near the gate showed a "U" piece on the heel that made a plain imprint. That they followed the car tracks leading from the wagon back to the highway where it appeared the car went north. Proceeding to Watonga to notify the sheriff, they found an old Ford car, loaded with cotton, parked near the courthouse.

The testimony of John Gose, sheriff, and Charley Sherrill, undersheriff, shows or tends to show the following facts and circumstances: That together, about 2 o'clock in the morning of Thanksgiving Day, they met the defendants about two miles south of Canton, on the road to Watonga, in a Model T Pickup Ford; in passing, noticed that the car was loaded with cotton; they turned their car and overtook the defendants within a mile; the defendant Nowlin was driving the car; they asked where they got the cotton in the car; the defendant said, "South of Eagle City from a fellow named McCarley." With the defendants they went to Eagle City. There sheriff sent Sherrill to see McCarley; when Sherrill returned he told the sheriff that McCarley said they did not get any cotton at his place. Then they went on to Watonga, placed the defendants in jail and parked their car with the load of cotton near the courthouse. About 11 o'clock the next morning Mr. Hoffman and Mr. Cooper appeared at the courthouse and reported the theft of the cotton. The officers then went to the jail and asked the defendants for their shoes, which they took to the cotton wagon and there measured the foot tracks near the wagon and at the gate. The defendants' shoes exactly fitted the shoe tracks found there. They examined the tire tracks of the defendants' car and found they were identical with the tire tracks they found between the highway and the cotton wagon. The sheriff sold the cotton in the car to the gin at Watonga; it weighed 875 pounds and he received therefor $22.50, and was holding the money subject to the order of the court.

Arnold Goerke testified that he was running a cotton gin at Watonga for the past 10 years, produced the scale ticket for the cotton sold to him by Sheriff Gose, eight or nine sacks, weighing 875 pounds; that the reasonable market value of the cotton at that time was 2½ cents a pound.

Murry Northcutt testified that he was manager of the Lyon Gin at Grandfield; purchased a half a load of cotton about November 30th from Clarence Hoffman; that he knew the value of cotton and the fair market value of the cotton of that quality and character at that time was 2½ cents a pound.

As a witness in his own behalf, Don Nowlin testified that in November, 1933, he was living near Canton; that T. M. McCarley, his second cousin, lived near Eagle City, 200 or 300 yards off Highway 270; that on November 29th, he returned a borrowed horse to McCarley; that Edward Peek came there to get his car, a Model T. Ford Roadster, with the turtle-shell taken off, that McCarley had borrowed; that there was cotton in the car; that they left McCarley's place about one o'clock, and were stopped on the road by the officers. Asked where they got the cotton and he told the officers they got it at McCarley's place, near Eagle City; the officers said they would all go to McCarley's.

He further testified that he never stole any cotton from Mr. Hoffman or any other person.

On the part of the defense, R. W. Judd testified that he lived in Caddo county, has been raising cotton about 15 years, and knew the fair market value of seed cotton in November, 1933, and it was $1.50 to $2 a hundred.

Verlin Hite testified that he lives in Caddo county, that on the 29th day of November, 1933, the defendants were at his place, they were driving a Model T. Ford; that he asked them to stay all night, and they said they had to be going; that they had to make a little money that night;

that he had been raising cotton all his life and knew the value of snapped cotton in November, 1933, and the customary price was from $1.50 to $2.

Fred Petty testified that he was a cotton buyer, and that he looked at the cotton in the Model T. Ford, parked near the courthouse, and made the statement that he did not think the cotton was worth $20.

Elmer Dickens testified that he worked at the gin there, November, 1933, and was familiar with the value of cotton and the top value of good snapped cotton at that time was $2.15.

Tom Nowlin testified that he lives 12 miles east of Minco, raised cotton all his life and knows the value of good snapped cotton in November, 1933, and at that time it was worth from $1.50 to $1.75.

T. L. McCarley testified that the undersheriff was out at his place on or about November 30, 1933, to see him about some cotton; that he did not sell Don Nowlin or Edward Peek any cotton.

When the state rested, the defendant interposed a demurrer to the evidence and moved for a directed verdict of acquittal, on the ground that the evidence was insufficient to show that said defendant committed the crime charged in the information, which was overruled. Exception taken.

It is urged that the court erred in overruling the demurrer and motion for a directed verdict of not guilty, because evidence was not sufficient to support a conviction, in that the state failed to prove the value of the cotton alleged to have been stolen was of the value of more than $20.

An examination of the record leaves no reasonable question in our minds as to the sufficiency of the evidence to justify the submission to the jury of the question as

to the defendant's guilt, and we think the evidence is without a doubt sufficient to sustain the verdict and judgment.

Several errors are assigned which relate to rulings of the court upon the admission of evidence.

In the case of Ricketts v. State, 23 Okla. Cr. 267, 215 P. 212, this court held:

"Forcibly taking shoes from a defendant under arrest for purposes of comparison of footprints does not violate his constitutional right not to be compelled to give evidence against himself."

Complaint is made as to the introduction of cotton samples, state's exhibits one and two.

An examination of the record shows that these exhibits were sufficiently identified and properly admitted.

One of the grounds of the motion for new trial and here assigned as error is that the court erred in permitting private counsel, namely, Ted R. Fisher, to prosecute the defendant without having been duly appointed as deputy prosecuting attorney of said county, in the absence of Nelson Crow, the duly elected, qualified and acting county attorney of said county, who was not present at said trial.

The record shows that Mr. Fisher was county attorney at the time the prosecution was instituted and as such filed the information in the case.

The record recites:

"A jury was duly impaneled and sworn to try said cause, counsel for the state, at the direction of the court, read the information, stated the plea and made an opening statement to the jury, after which testimony was introduced by the state, as follows."

The record shows that no objection was made, or exception taken to Mr. Fisher appearing as counsel for the state. The record does not show that Nelson Crow, county

attorney, was not present during the trial, and does not show who was appearing for the state in the examination of the witnesses for the defense.

Our Procedure Criminal provides:

"If the county attorney fails, or is unable to attend at the trial or is disqualified, the court must appoint some attorney at law to perform the duties of the county attorney on such trial." Section 3056, St. 1931, 22 Okla. St. Ann. § 859.

In the case of Baggett v. State, 35 Okla. Cr. 119, 248 P. 875, this court held:

"The district courts of this state have the power to appoint a suitable person to perform for the time being the duties required by law to be performed by the county attorney, when the county attorney shall be absent from the county, or unable to attend to his duties, or disqualified in any particular case. Aside from any statute this power is inherent in a court of general jurisdiction."

And see Bethel v. State, 8 Okla. Cr. 61, 126 P. 698; Hisaw v. State, 13 Okla. Cr. 484, 165 P. 636; Teeters v. State, 49 Okla. Cr. 13, 292 P. 879.

It has been repeatedly held by this court that only those questions can be considered on appeal, unless jurisdictional or of a fundamental character, which were raised in the trial court on exceptions taken, and unless incorporated in the motion for a new trial, and thereby submitted to the trial court, the same will not be considered on appeal. Kennamer v. State, 59 Okla. Cr. 146, 57 P. 2d 646.

This court has often held that on appeal the burden is upon the appellant to establish both error and prejudice resulting therefrom. Upon the record before us there is nothing in this assignment to justify this court in interfering with the judgment.

Another assignment is:

"That the court erred in the giving of supplemental instructions after the jury had retired to consider its

verdict, at the request of the foreman of said jury, and in the absence of the defendant."

The record shows that the court gave a supplemental instruction to the jury as to the right to return a sealed verdict. It does not appear from the record that the defendant was not personally present when the supplemental instruction was given. It appears from the record that the jury returned its verdict on the day the case was submitted, and it was not a sealed verdict.

We think there is no merit in this assignment.

The record fails to show that any objection was made during the trial, because of absence of the defendant, and it appears that no such objection was embodied in the defendant's motion for a new trial.

In the case of Burns v. State, 8 Okla. Cr. 554, 129 P. 657, this court held:

"Unless the record affirmatively shows the absence of a defendant during his trial, the question that he was not present at such trial cannot be raised for the first time upon appeal."

In the case of Woodring v. Territory, 15 Okla. 309, 310, 81 P. 631, the Supreme Court of Oklahoma Territory held:

"Where the record shows the presence of the defendant in a criminal case at a session of court it will be presumed that he continued to be present in court during the day, or until the first adjournment, unless the contrary is made to affirmatively appear."

It must be taken as settled in this state the rule that error must affirmatively appear from the record; it is never presumed. Every presumption favors the regularity of the proceedings had upon the trial. The plaintiff in error must affirmatively show prejudicial error; otherwise the judgment of the trial court will be affirmed. Killough v. State, 6 Okla. Cr. 311, 118 P. 620; Chappelear v.

174

State, 10 Okla. Cr. 392, 136 P. 978; Ables v. State, 35 Okla. Cr. 26, 247 P. 423.

No other reason for a reversal of the judgment being urged, and no substantial error appearing in the record, the judgment to the district court of Blaine county herein is affirmed.

DAVENPORT, P. J., and BAREFOOT, J., concur.