JOHN H. DANIEL v. STATE.

No. A-9563.   Aug. 15, 1939.
(93 P. 2d 47.)

Clyde Andrews, of Chandler, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error was by information in the district court of Lincoln county charged with the crime of assault with a dangerous weapon; was tried, convicted, and sentenced to serve ten months in the county jail of Lincoln county. Motion for a new trial was filed, considered, overruled; and the defendant appeals.

The facts in this case are very brief. The prosecuting witness, W. P. Stone, was occupying a portion of a building with a fruit stand in the city of Chandler, and had subleased the building from the sister of the defendant. An uncle of the defendant had been occupying a portion of the building, and died leaving the building unoccupied. It was necessary to move some furniture or fixtures from the building occupied by the uncle of the defendant, who died; in order to do so a portion of the partition between the room occupied by the deceased and the prosecuting witness had to be removed. This was agreeable to all the parties. The defendant, who had recently recovered from a hernia operation, got a Mr. Orr to help him remove a portion of the partition, so as to get the furniture out of the room formerly occupied by the deceased uncle of the defendant. While doing so, the testimony shows that the prosecuting witness Stone came into his place of business, where the defendant and Orr were working to remove the partition, in order to get the furniture out of the room formerly occupied by the defendant's deceased uncle; and a general conversation took place. The defendant was working with a nail bar in removing some of the boards from the partition. The prosecuting witness approached him and asked him who was going to pay certain telephone bills that had been put in over the telephone in the prosecuting witness' place of business, and received a reply from the defendant that he was not paying any bills. The defendant says that the prosecuting witness in sub-

stance said that some one had to pay them, and that he would see to it.

It is disputed as to what language was used; but it is not disputed that the prosecuting witness advanced towards the defendant, and handed him the bill; and the defendant looked at it, and handed it back to him. Some words passed between them; and the prosecuting witness Stone advanced towards the defendant, and started to grab his arms. Stone was followed by a grown son of his; and when they did so, the defendant struck Stone on the arm with the nail bar, hitting him once or twice.

The proof shows that the defendant was in a weakened condition from the recovery of his hernia operation, and was not physically able to engage in a general free-for-all fight. The prosecuting witness as shown by the record was willing, it seems, to argue with the defendant; and as the defendant testified, Stone advanced on him, followed by his son, and tried to catch defendant by the arms.

The defendant stated he believed that he was then in danger of being beat up by Mr. Stone and his son; and he struck the prosecuting witness in order to protect himself from physical injury by Stone and his son.

The defendant on cross-examination stated:

"The prosecuting witness said, 'God damn you, I will knock hell out of you.' Both the prosecuting witness and his son threatened me, and he grabbed at me with his hands. The son was nearby at the time."

The defendant admitted that he struck the old man two licks.

On further cross-examination the state attempted to lay the predicate for impeaching the defendant by asking him the following question:

"Q. At the time you were brought to the county jail here, didn't you say to Arthur Williams words to this

effect that: 'I ought to have finished him while I had him down'? A. No, sir."

Arthur Williams was asked while on the stand for the state the following question:

"Q. I will ask you to state if he didn't, in a conversation with you regarding the altercation he had down the street, say: 'I ought to have finished the old man while I had him down'? A. He didn't say, 'While I had him down.' He said, 'I ought to have finished him.'"

The defendant in his motion for a new trial attached the affidavits of R. A. Powers, Denny Williams, and Gernie Green, in which affidavits they stated that they were in the county jail at the time John Daniel was incarcerated there; and the defendant, John Daniel, did not make the following statement: "I should have finished the old man while I had him down," or any words to that effect or any other statement in substantially the same form; that they were present all the time the defendant talked with Arthur Williams.

These affidavits were in support of the defendant's motion for a new trial; and it was shown that the defendant had no knowledge of these witnesses until after the trial; and the question had been propounded to Arthur Williams; and he gave the answer that he did, while his answer is not responsive to the question propounded to him, because Arthur Williams stated that defendant did not say that the defendant said he should have finished the prosecuting witness, while he had him down.

The foregoing is the substance of all the testimony.

The defendant in his petition in error has assigned seven errors alleged to have been committed in the trial of his case.

It is only necessary to consider the sixth assignment:

"That the court erred in overruling the defendant's motion for new trial upon the general grounds therein stated."

The record discloses that the defendant in this case was at a place where he had a right to be; and the prosecuting witness raised no objections to the defendant being where he was, in removing a part of the partition in order to get some property belonging to an uncle of the defendant, who had recently died, out of a room in a portion of the building not occupied by the prosecuting witness.

No question is raised that the defendant was unlawfully trespassing upon any property of the prosecuting witness. All of the testimony shows that the defendant was working to remove a portion of the partition when the prosecuting witness presented a telephone bill to the defendant, and wanted to know who was going to pay it; and the defendant told him that he was not paying any bills. The prosecuting witness replied that some one had to pay it.

There was a controversy as to what language was used, but it is undisputed that the prosecuting witness, W. P. Stone, and his son, who was just behind W. P. Stone, advanced on the defendant; and that W. P. Stone got close enough to try to catch or did get hold of the defendant's arm; and it was then that the defendant protected himself by hitting the prosecuting witness, W. P. Stone, with a nail bar that he had in his hand, working in removing that portion of the partition that was deemed necessary to remove in order to get the furniture out.

The defendant in his brief insists that, as the undisputed testimony of the defendant shows, when he struck the prosecuting witness he did so in his necessary self-defense, in order to prevent him from receiving injury from the prosecuting witness and his son.

Under section 3079, O. S. 1931, 22 Okla. St. Ann. § 856, it is mandatory that the court must inform the jury on matters of law which he thinks necessary for their information in rendering their verdict.

In charging the jury as to the law applicable to the facts in the case, it is a fundamental duty of the court to instruct on all of the phases of the defense as shown by the evidence of defendant; and when the court fails to do so, he has deprived the defendant of a fair and impartial trial.

In Collegenia v. State, 9 Okla. Cr. 425, 132 P. 375, 376, in the sixth paragraph of the syllabus, the court said:

"In a prosecution for murder, the court should instruct upon the law applicable to the case, whether requested to do so or not. The law applicable is determined by the accusation and the evidence introduced upon the trial, and, when the evidence tends to show justification in self-defense and in defense of habitation, it is the duty of the court to submit instructions properly embracing the law of self-defense."

In Hopkins et al. v. State, 28 Okla. Cr. 405, 231 P. 97, in the second paragraph of the syllabus the court stated:

"It is the duty of the trial judge to instruct the jury on the salient features of law raised by the evidence without a request from defendants. * * *"

In Courtney v. State, 10 Okla. Cr. 589, 140 P. 163, in the first paragraph of the syllabus, this court stated:

"The accused, in a criminal case, is entitled to instructions defining the law applicable to his theory and covering his defense, if there is competent evidence tending reasonably to substantiate such theory."

No one can examine this record and doubt that there is ample testimony in this case that the defendant's testimony is ample and sufficient on the question of self-defense to make it the duty of the trial court to give a specific charge, defining self-defense, and the right of the defendant to defend himself under such conditions.

In Scott v. State, 40 Okla. Cr. 296, 268 P. 312, in the second paragraph of the syllabus, the court stated:

"A defendant in a criminal case has a right to have an instruction applicable to his testimony based upon the hypothesis that it is true, where such testimony is upon a material issue. Where, however, in a homicide case his testimony clearly excludes the theory of self-defense he is not entitled to an instruction on the law of self-defense."

In this case the testimony of the defendant clearly shows that when he struck the prosecuting witness, he was acting in self-defense, and that he believed at the time he struck the prosecuting witness it was necessary for him to do so in order to prevent him from receiving great bodily injury or harm at the hands of the prosecuting witness and his son, who was following his father upon the defendant at the time the defendant struck the prosecuting witness with the nail bar.

In Nelson v. State, 34 Okla. Cr. 187, 245 P. 1009, this court, in the third paragraph of the syllabus, stated:

"In a prosecution for assault with intent to kill, where the evidence tends to show justification in defense of habitation and in self-defense, it is the duty of the court to submit instructions covering the law of the case, and, where that has not been done, this court on appeal will reverse the judgment."

It is evident from the record that the defendant did not have a fair and impartial trial, and that the failure of the court to instruct the jury upon the law of self-defense was prejudicial to his case. For the errors indicated, the judgment of the lower court is reversed.

DOYLE, P. J., and BAREFOOT, J., concur.