## WAID THOMAS v. STATE.

No. A-9560. Nov. 2, 1939.

(95 P. 2d 651.)

W. C. Henneberry, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for the State.

BAREFOOT, J.   An information was filed in Tulsa county, charging defendant with the crime of assault with a dangerous weapon upon Waite Sixkiller.   He was tried, convicted, and sentenced to serve a term of one year in the penitentiary, and has appealed.

Defendant owned and operated a place of business where beer and other soft drinks were sold in the city of Tulsa.   The prosecuting witness, Waite Sixkiller, who was a Creek Indian, came to defendant's place of business on the night of December 31, 1937. He was under the influence of intoxicating liquor, and, as witnesses testified, was drunk and boisterous, and using profane language.   The young lady who was serving customers testified that he was cursing and swearing, and when she asked him to desist and not bother the other customers he threatened to throw her out of the building.   She reported his conduct to the defendant, and he went to where prosecuting witness was and requested that he be quiet and have a good time and put up the corn liquor which he had, and that the prosecuting witness said: "I don't have to—that his name was Sixkiller and that he did whatever he pleased wherever he went." Defendant went back to the front and sat down, and the young lady came back and reported to him again of the conduct of the prosecuting witness.   That

he went back and led him out of the front door and defendant testified as follows: "He said he was going to tear up the God-damned place", and I said: "I will try and take care of that myself". Just as he left him on the outside, he heard the window crash. A glass window thac cost $40 to replace. He went outside with his pistol in his pocket and was told that the prosecuting witness was the party who had broken the window. He went across the street to arrest him and hold him until the officers arrived. He started back across the street with him and defendant testified as follows:

"A. I ran across the street and says, 'Come on, Sixkiller—I am going to turn you over to the police'. He says, 'You are, like hell—I am going to break out every glass you got'. I got him by the arm and started back, and we got back pretty close to the middle of the street, while I was taking him back to the place and he started fighting me, and clinched me and run his hand in his pocket, and when he did, I hit him with the pistol. Q. Where did you have the pistol? A. In my trousers with my vest over it. He clinched me and I pulled it out and pulled him over and slapped him this way (indicating). I did hit him with the pistol, but I hit him with a short blow, this way. Q. Did you stand up and fight all the time? A. For the time being, we did, and, in some way, as I remember it—it was kind of raining—and in some way, he tripped me, and we fell to the pavement, and just about the time we fell, I heard Felix say, 'Waid, give me that pistol.' Q. By 'Felix' you mean Altaffer? A. Yes, sir. I don't believe he said, 'Waid'. I recognized him and gave it to him. I says, 'Take him to jail'. He says, 'Do you want to file charges', and I says, 'I certainly do.' Q. Did you? A. I did. I got in my car and followed him down there and filed charges. Q. The police, did not arrest you? A. No, sir. I showed up the next morning as complaining witness against Sixkiller. He didn't, so they then issued a bench warrant for him. Mr. Simms: We object to all that. The record is the best evidence. The Court: Sustained. By

Mr. Henneberry: Q. He was not there that morning?
A. He was not. Q. You have never been notified again
to be down there? A. No, sir. They said they would notify
me."

The prosecuting witness denied striking defendant or
doing anything, but says that defendant struck him with-
out cause. He further testified that he did not break out
the window, and that he did not appear at the police sta-
tion the next morning for the reason that he was in the
hospital.

Several errors are assigned, but we deem it only neces-
sary to consider but one. The defendant requested the
court to instruct the jury as follows:

"The court instructs the jury that, if a person is as-
saulted in such a manner as to produce in the mind of the
person so assaulted a belief that he is in actual danger
of losing his life or suffering great bodily harm, he will be
justified in defending himself, though the danger be not
real, but only apparent, and such person will not be held
responsible criminally if he acts in self defense from real
and honest convictions as to the character of the danger,
though he may be mistaken as to the actual extent of the
danger."

The court refused to give this instruction and defen-
dant excepted. It is contended by defendant that the re-
quested instruction presented to the jury his defense, and
the only defense he had, that of self-defense.

We have carefully examined the instructions given
by the court and find that they nowhere presented to the
jury the theory of the defense. That is the issue of self-
defense as testified to by him. This court has universally
held that it was the duty of the court to present to the
jury instructions in plain and concise language, giving not
only the contention of the state, but that of the defense,
and it has always been held as reversible error for the

court to fail to give an instruction covering defendant's theory or defense where the issue is material. Here the court not only failed to give an instruction presenting the defense of defendant, but also refused to give the requested instruction covering this defense that was offered by him.

In the case of Daniel v. State, 67 Okla. Cr. 174, 93 P. 2d 47, recently decided by this court, the facts are almost identical to the facts in the instant case. The court there said:

"In prosecution for assault with a dangerous weapon, wherein evidence tending to show justification of self-defense, trial court had duty to submit instructions defining self-defense."

In this case many cases are cited from this court upholding this principle. It is useless to cite them here. The testimony of the defendant, as above quoted, presents the question of self-defense. The instruction requested by defendant called it to the attention of the court, but it was refused. The instruction given by the court nowhere contained one that presented this issue.

Other assignments of error are presented, but it is unnecessary to pass upon them, and for the reason above stated, the judgment of the district court of Tulsa county is reversed.

DOYLE, P. J., and DAVENPORT, J., concur.