Ray GALBERT, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12068.

Criminal Court of Appeals of Oklahoma.

Dec. 8, 1954.

King & Wadlington, Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, Judge.

The defendant, Ray Galbert, was charged by an information filed in the District Court of Pontotoc County with the crime of murder, was tried, convicted of manslaughter in the first degree and pursuant to the verdict of the jury, was sentenced to serve 25 years in the penitentiary and has appealed.

The defendant, Galbert, an unmarried man, and the deceased, Robert Hightower, were next door neighbors on August 29, 1953. They were negroes. About 9:00 P.M. on that date, the defendant fired one shot from a shotgun out of a window in defendant's home and struck the deceased who was standing in his own yard close to a fence which separated the two houses. Hightower died eleven days later as a result of the gunshot wounds.

The proof of the State showed that a wedding occurred at the Hightower home about 8:00 P.M. the evening of the homicide between the sister of the wife of deceased and one A. L. Bennett. Several relatives attended the wedding. During the evening one Louise Miller whispered something to the deceased which caused him to become angry with his wife. The record does not disclose just what was said to the deceased to make him angry, but it in some way concerned an alleged relationship between defendant and deceased's wife. Deceased quarreled with his wife and even produced a .38 caliber revolver which he later handed to A. L. Bennett. Shortly thereafter the deceased went into his yard near the fence separating his premises from that of the defendant and commenced to curse and yell epithets at the defendant who was not in sight but who was at home. While the cursing was being done by the deceased, the defendant pushed a shotgun through a pasteboard covering over one of the windows and fired the shot which struck the deceased and later caused his death. Deceased was unarmed at the time of the shooting. Shortly after this shot was fired, A. L. Bennett ran into the yard and fired twice with a .38 revolver which had been handed to him by the deceased. He said he did this to scare Galbert and to

prevent him from firing shots into the house where he might injure some of the children.

On behalf of the defendant the firing of the fatal shot was admitted, but it was contended that defendant acted in his own necessary self-defense. In that connection defendant stated that he heard the deceased cursing him and came to the window and asked the deceased if he was referring to him (the defendant) and deceased said that he was referring to him. Defendant testified that at that time the deceased fired two shots at him, one of which grazed his cheek, and that after these two shots were fired, he seized his shotgun and fired at the deceased without any intention of killing him, but solely to try to shoot the pistol out of his hand. Defendant produced witnesses who testified that they heard two rapid shots and then one louder shot which corroborated his testimony as to the timing of the shots. In rebuttal the State produced witnesses who testified that the shotgun blast came first followed a few minutes later by two pistol shots fired in quick succession.

■ The contention of the defendant that the evidence was insufficient to sustain the verdict cannot be sustained as the testimony presented an issue of fact for the determination of the jury under proper instructions. The evidence of the State would have sustained a conviction for murder.

It is contended that the court erred in permitting the jury to go view the premises where the homicide allegedly occurred after the case was finally submitted to them without conforming to the requirements of Section 851 of Title 22 O.S.1951.

■ The record is silent as to any view of the premises being taken by the jury except in connection with the argument on the motion for new trial. The court stated at that hearing in connection with the discussion of another matter that the jury had requested permission to go to the premises and that counsel for the defendant had agreed that they might go. The record is wholly silent and the defendant offered no proof that the requirements of 22 O.S.1951 § 851 were not fully complied

with in connection with this incident. The record is silent as to what was done. The minutes of the court proceedings do not even show that the jury inspected the premises. There is a strong presumption in favor of the regularity of proceedings by officers in the performance of the duties prescribed by law and if counsel for the defendant had wished to make an issue of noncompliance with the statutory provision referred to, they should have introduced some evidence to support their contention.

Counsel further contend in connection with this assignment of error that by statute, 22 O.S.1951 § 857, a jury is prohibited from viewing the premises after they have retired for deliberation on the case.

■ The statute does not so hold and this court has held that a view of the premises by the jury in a criminal case is not a receiving of evidence by the jury in the sense as used in the Constitution and statutes of this state, Yeager v. State, 43 Okl. Cr. 318, 278 P. 665, and a view of the premises taken after final submission has been sustained, Bird v. State, 22 Okl.Cr. 263, 210 P. 925.

The Supreme Court of the United States in the case of Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575, has held that a view by a jury is not a part of the trial and that it is not necessary for the defendant to be present. In the headnotes to that case it is stated:

"Due process of law under the Fourteenth Amendment is not denied by denying the motion of a defendant on trial for murder to be permitted to be present at a view by the jury, where the jury are accompanied by the judge, the court stenographer, the district attorney, and counsel for the defendant, and there is a stenographic transcript of all that was said or done, and the defendant could have shown at the trial if their attention was not called to something material, although counsel for both sides are permitted, without any statement of the evidence, to point out particular features of the scene and to request the jury to observe them.

"The Fourteenth Amendment does not assure to a defendant the privilege to be present at a bare inspection by the jury at which nothing is said to direct attention.

"A view by a jury is not a 'trial,' nor any part of a trial, in the sense in which a trial was understood at common law."

It is next contended that the trial court erred in not instructing the jury that evidence as to a prior conviction of defendant was admitted only for the purpose of affecting his credibility as a witness. In support of this contention there is set forth in the brief of the defendant the cross-examination of the defendant concerning his prior conviction for murder. However, in reading the record, we ascertained that counsel for the accused in his direct examination first brought out the fact of the former conviction, the details of the crime and the fact that he had been later pardoned by the governor.

In addition, no request was made to the trial court to give an instruction pertaining to this contention which is presented on appeal. Counsel correctly stated the law that a witness may be cross-examined as to prior convictions for crime only for the purpose of affecting his credibility as a witness. Atkinson v. State, 87 Okl. Cr. 142, 196 P.2d 522; Powell v. State, 88 Okl.Cr. 404, 203 P.2d 892. However, in the absence of a request for an instruction on this point and in view of the fact that counsel for the accused brought out the fact of former conviction in the direct examination of the accused, we cannot conclude that the court's failure to give an instruction on this point constituted fundamental error.

It is next contended that the court committed error in overruling a motion for new trial upon the ground of newly discovered evidence, to-wit: The alleged finding of a bullet laying on the floor of a closet across the room from the window where the defendant purportedly stood at the time he fired the fatal shot. It was contended that the finding of the bullet was cor-roborative of the testimony of the defendant because the bullet was found at a place which indicated that it could have been fired from the gun of the deceased. The testimony at the hearing on the motion for new trial in connection with this assignment of error convinces us that it is unworthy of belief. If this testimony is to be believed, the deceased fired a .38 caliber bullet which struck the cheek of the defendant and glanced off, then sped across the room through a crack between two boards in the wall and then suddenly lost all of its force and dropped harmlessly to the floor of the closet without leaving any marks at all on the bullet showing that it had even been fired from a gun. The evidence during the trial disclosed that the room had been searched thoroughly by the sheriff three different times looking for bullet holes or bullets without finding either. Counsel for the defendant testified at the trial concerning an examination of the house of the defendant that there were cracks in the wall through which a bullet could have gone, but he specifically testified that they could find no bullet in the house in the line of fire as allegedly testified to by the defendant. Several weeks passed after the shooting before the date of the trial and the evidence disclosed that during this time the premises had been examined by many people on both sides of the case. The strange appearance of this bullet after the trial, which if the record is true did not show that it had ever passed through the barrel of a gun, is not of sufficient credence to justify a trial court in granting a new trial on this account. It is comparable in many ways to the finding of the stray shell which formed the basis for the request for a new trial in Hathcox v. State, 94 Okl.Cr. 110, 230 P.2d 927.

The attack made by the defendant on instruction number twenty is without substantial merit. We can find no reversible error in the record and the judgment and sentence of the District Court of Pontotoc County is affirmed.

POWELL, P. J., and BRETT, J., concur.