W. B. CRABTREE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12589.

Criminal Court of Appeals of Oklahoma.

Sept. 24, 1958.

Rehearing Denied Oct. 29, 1958.

As Corrected Nov. 17, 1958.

Collins & Moore, Sapulpa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

W. B. Crabtree, plaintiff in error, hereinafter referred to as defendant, was charged in the Superior Court of Creek County, Drumright Division, with intent to kill, and convicted of the included offense of assault to do bodily harm, and was by the court sentenced to serve a term of three years in the State Penitentiary.

For reversal counsel argue his case under two propositions;

(1) "The court failed to properly instruct the jury as to the law of self-defense.

(2) "The court allowed the jury to separate and mingle with bystanders in the court room without giving the statutory admonition as to conduct to the jury."

Considering the last proposition first, we have carefully examined the case-made to discover therefrom what actually transpired, and if the record would support the conclusions set out in the proposition presented.

From the record we find that when the within case was called, counsel for the defendant sought a continuance and presented some evidence in support of his motion; that the court refused to grant a continuance, and the selection of a jury commenced and the jury was selected and sworn. The minutes show that: "The court reporter being out of the room and making no record as to the court's admonition to the jury, the court announced a short recess."

The above minute would indicate that the court had actually admonished the jury, which means in accordance with 22 O.S. 1951 § 854, reading:

"The jury must also, at each adjournment of the court, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves or with anyone else on any subject connected with the trial, or to form or express any opinion thereon, until the case is finally submitted to them."

The minute further shows that while the jury was out counsel for defendant made the following record:

"Mr. Moore: If your Honor please, at this time comes now the defendant and objects to the continuing of this trial at this time upon the grounds and for the reason that prior to and during the last recess there was no admonition to the jury covering their conduct during the recess of the case.

"By the Court: Overruled."

After this ruling the county attorney read the information to the jury and outlined to them the State's case, to which the defendant had entered a plea of not guilty. Following this, the rule was asked, the witnesses were sworn and evidence in the case was heard by the jury.

 The general rule is that the burden rests upon a proponent of a motion to support the same by evidence, unless the purported facts are admitted. Here the minute is in conflict with the asserted facts of the motion. The minute indicates that some admonition by the court to the jury was made, but just what, we are not advised, because the minute says that the court reporter was not in the room when the admonition was made. We must presume, in the absence of evidence to the contrary,

that the court actually advised the jury, as the court is presumed to follow the law. As said in Galbert v. State, Okl.Cr., 278 P.2d 245, 246:

"There is a presumption that officers perform their duties in the manner prescribed by law and where it is contended that there is noncompliance with certain statutory provisions, it is incumbent upon the one making such assertion to introduce evidence to support his contention."

It is stated in 22 C.J.S. Criminal Law § 589, p. 903:

"In the absence of proof to the contrary, the proceedings of courts properly exercising criminal jurisdiction are presumed to be regular, and the mere failure of their records to show this, does not overcome the presumption. * * *"

See also Ex parte Owen, 82 Okl.Cr. 415, 422, 171 P.2d 868, and cases cited.

If perchance the court did not actually admonish the jury, counsel for the defendant should have called such fact to the attention of the court at the instant the jury arose to leave the room, if it did leave, so that the court would have had opportunity to give the admonishment. It is apparent that counsel was more interested in a mistrial than in the enforcement of the precautionary measures to prevent a violation of the statutory provisions quoted.

■ Under the state of the record, we do not find where any substantial right of the defendant had been violated in respect complained of.

The principles of law with reference to admonition of juries, set out in Rutherford v. State, 95 Okl.Cr. 311, 245 P.2d 96, cited by both the defendant and the State, is adhered to and we consider nothing that we have said herein contrary thereto.

In considering the proposition that the court failed to properly instruct the jury as to the law of self-defense, a statement of the charge and a summary of the pertinent evidence is necessary for a clearer understanding.

The defendant was charged with on July 6, assaulting A. J. Garnett, with intent to kill, by shooting him with a certain pistol.

A. J. Garnett testified that on July 6, 1956, he was living at 140 Cherry Street, Drumright; that he was 72 years of age at the time; that he was acquainted with a Mrs. Linville who lived at 143 East Maple Street, Drumright. That he had obtained materials from a lumber yard to build a corner cabinet for Mrs. Linville in her dining room, and had cut the lumber at his home, where he had a power saw, and necessary tools for cabinet work, but at around 5:45 in the afternoon he carried the sawed-out parts to the Linville home there to assemble the cabinet. While witness was installing the cabinet, he said that he heard Mrs. Linville talking on the telephone, and heard her exclaim: "And that is a threat, is it?" The court properly sustained an objection to this, and admonished witness to just tell what took place. Said the witness:

"And the first thing I knew Mr. Crabtree rushed into the back door and had a gun in his hand, and he cursed Mrs. Linville and told her he was going to kill her. She screamed and run out on the front porch and he started to follow her. I said, 'Don't shoot that woman', and he turned around and pointed the gun at me and said, 'Keep out of this or I will let you have it', and he went on out on the porch and I heard a shot and I don't remember whether it was one or two shots that was fired and she came back in and passed me and I didn't know what became of her and he followed her back in and run up four or five feet from me and pointed the gun at me and shot me.

"Q. Where did he shoot you? A. It hit me about here (Indicating).

"Q. Go ahead. A. Just as soon as he shot me I run into him and bowled him over and took the gun away from him and threw the gun. I don't know why I threw it, but I took the gun and

then I got up and walked out on the porch and out into the yard and sat down either in the yard or on the steps, I don't remember where I sat down.

"Q. Is that the last thing you remember, sir? A. Well, I remember them picking me up and putting me in an ambulance and taking me to Cushing to the hospital."

Witness said that when defendant came back in the room he did not notice any blood on him; that witness did not make any contact with defendant prior to being shot by him, but witness said he did make contact with defendant after being shot by him. He said defendant was but about four or five feet away when he pointed his gun at witness, and that he ran at defendant as he shot, and fell upon him.

Witness on cross-examination denied that he had ever heard or known that defendant and Mrs. Linville had ever lived together, or were generally known to be husband and wife. He denied that when defendant came in the Linville home that he asked to speak to witness and asked Mrs. Linville to retire to the front porch while he talked to witness. Witness denied having anything in his hand at the time he was shot, but he did say that when defendant first came in he was installing the cabinet in the dining room and had his carpenters' tools with him. Witness admitted that he had had a few dates with Mrs. Linville, whom he knew as being a widow.

Dr. E. O. Smith testified that he first saw A. J. Garnett on the evening of July 6, 1956, and that Mr. Garnett remained in the hospital until July 15. He said that he did not remove a bullet from patient's chest, as the bullet went entirely through the body. Witness further testified:

"Q. Would you describe for the jury, sir, the type wound he had received, the type wound it was? A. Well, the bullet undoubtedly entered in front just to the right of the sternum, because there was a powder burn there about two inches in diameter and it

ranged downward and *latterly* and came out in the back between the eighth and ninth ribs in the back. And he also had a powder burn on the back of his left hand, the skin.

"Q. Then it probably wasn't possible from your observation of Mr. Garnett, to tell what type of gun he was shot with? A. No, I couldn't tell. It was a pretty good size hole, I would judge about a .44 is what I would imagine.

"Q. What did you do for him while he was there under your care? A. Well, the man was in extreme shock and the first thing I did was to give him a transfusion as soon as I could possibly find the vein, which really saved his life, we feel like. And then we gave him appropriate treatment. He was bleeding quite a bit from the anterior wound and there was also air coming out of his wound and the hole, which showed us he had a punctured lung and a pretty good size blood-vessel."

Ulys Hart, chief of police of Drumright, testified to receiving a call to go to the home of Mrs. Linville, and he testified that when he got there A. J. Garnett had been removed to the hospital; that Mrs. Linville was lying on the floor and was being attended by Dr. Reynolds; that the defendant Crabtree was kneeling over Mrs. Linville; that he asked defendant where the gun was and he pointed to a table; that he found the gun and it contained four empty and one live cartridges. Said he: "I asked him why he would do something like that, and he said: 'Well, when somebody tells me something I can't do, I do it', and said, 'You would do the same thing.'"

The defendant, W. B. Crabtree, as to the facts of the shooting, denied that he followed Mrs. Linville out on the porch of her home, shooting at her. He testified that Mrs. Linville had, between four and five o'clock on the day in question, crossed the alley to his home and had some discussion

about a proposed supper date with Mr. Garnett. Said he:

"She said, 'Well, honey, Mr. Garnett is going to take me to supper over to Cushing tonight.' And it kind of stunted me and I thought a minute and I said, 'Well, I guess that is all then between us.' She didn't say nothing and then I says to her, 'Do you think that is right?' And she says, 'Well, I don't know whether it is or not, but I am going.' I said, 'Well, if that is the case we had better get a divorce.'

"Q. What did she say then? A. She didn't give me no answer.

"Q. Where did she go then? A. She went back across the alley home.

"Q. Did you later go over there? A. I sat around there for a few minutes and thought, 'Well, I will call her and tell her I am coming over and see if I can't talk the thing over with Garnett if he is there.' And I called her and told her, said, 'Well, I would like to talk this over.' And she gived me some kind of answer, I don't remember just what and I says, 'I will be over.' And she says, 'Well', and hung up.

"Q. And you went over there? A. I went over.

"Q. What happened when you got inside the door? A. Well, when I went in she was there and he was there and I told her, I says, 'I would rather you just step out and I would like to talk to Garnett about it'.

"Q. Did she go out? A. Yes, she went out the front door.

"Q. Did you start to talk to Mr. Garnett about it? A. I says, 'Mr. Garnett, what do you mean coming over and trying to break up my home?' And he called me some kind of name, I don't remember just which, and he said, 'I don't know whether you've got any damn home or not, whether you are married or not.' And he was standing over there with a hammer, it looked like, in his right hand and started toward me and when he did that, I reached on this shelf and got the gun.

"Q. What shelf is that? A. The shelf, it is on one of them where they have them to divide the dining room and living room together.

"Q. A Colonnade? A. Yes. Colonnade, yes.

"Q. How did you know a gun was there? A. I had taken the gun at previous times and left it with her for her protection. She had made the complaint several times that she thought she heard somebody around the house.

"Q. How many shells did the gun have in it when you took it over there? A. Five.

"Q. Where did you leave the hammer of the gun? A. On an empty.

"Q. On an empty shell or cylinder? A. Empty cylinder.

"Q. Then what happened? A. Well, I reached and got the gun and he run into me and knocked me down and my head hit against something and I went to fire the gun and I don't know where the bullets went and the gun went to firing and I don't know how many went off or a thing about it.

"Q. Mr. W. B. Crabtree, do you tell this court and jury you ever intended to do any body any harm in that house? A. No, sir, I wouldn't have hurt one of them for nothing in the world. I just thought the world of her, she was just as nice a woman as there was.

"Q. What did you do after you came to or after Mr. Garnett was on top of you? A. I just taken the gun and laid it on the table.

"Q. And Mr. Garnett didn't wrestle the gun out of your hand or anything like that, did he? A. No sir, never did get it out of my hands.

"Q. Do you know to this day how many shots you fired? A. Only here in the preliminary they said it was two shots.

"Q. You don't know how many shots you fired? A. I do not."

Witness said that Mrs. Linville had been dead about a month at the time of the trial. She did not die of wounds received, but from a heart attack.

On cross-examination defendant said that when he came in Mrs. Linville's home Mr. Garnett had in a hand what looked like a hammer down at his side. He denied having shot his gun prior to being run into by Mr. Garnett. He said he did not think Garnett hit him, but ran into him and knocked him down and that he did not know how many times he shot; that the gun just started going off.

With the above in mind, we now consider the complaint of counsel that the trial court did not properly instruct the jury as to the law of self-defense.

We find that there was no request by counsel for the defendant or any intimation or suggestion that the court should give any instruction on self-defense. In view of the evidence set out, this is readily understood. We do not discover where the defendant ever claimed that he acted in self-defense, or testified to facts that would so indicate. Counsel's theory of defense made in opening statement to the jury is not shown by the record. Garnett had testified that he was installing a cabinet in the corner of the dining room for Mrs. Linville when the defendant rushed into the room with a gun in his hand and cursed Mrs. Linville, and told her that he was going to kill her, and that she screamed and ran out on the front porch and defendant started to follow her. Garnett said, "Don't shoot that woman", and defendant turned and pointed the gun at him and said, "Keep out of this or I will let you have it." Garnett said that the defendant went out on the porch and he heard a shot, and did not know whether it was one or two shots; that defendant came back into the room and approached Garnett and pointed the gun at him and shot him, following which Garnett ran into defendant, bowling him over, and took the gun away from him.

Defendant, we have seen, testified that Mrs. Linville left the room at his request, but denied that he followed her out on the porch, or fired any shots at her. Defendant testified further that "Garnett was standing with a hammer, it looked like, in his right hand, and started toward me and when he did, I reached on the shelf and got the gun." He did not testify that Garnett ever raised the hammer or tried to hit him with it, or acted menacingly. In fact, he said that he did not think Garnett ever hit him with the hammer, but that Garnett ran into him and knocked him down and that his head hit against something and he went to fire the gun and did not know where the bullets went or what happened; that there was no shot fired until he was knocked down. Such story does not account for the shooting of Mrs. Linville, and is, as argued by the Attorney General, contrary to the speculation of counsel for the defendant to the effect that Garnett was leaning forward toward the defendant when he was shot.

We note that by Instruction No. 12 the court cautioned the jury that the law of self-defense is given to a citizen for his protection, and that it cannot be pled as a defense by one who is an aggressor and who enters voluntarily into difficulty, armed with a deadly weapon. Defendant from the evidence knew and could see that Garnett was using carpenters' tools in installing the cabinet. *If his story were true that he did not enter the room with a gun in his hand, he got one off a shelf when Garnett had never raised his arm menacingly, and had not at any time tried to hit him.* The instruction in question was excepted to, but it was the duty of counsel to suggest his theory of defense and offer an instruction to aid the court. Counsel should be frank with the court. Otherwise, would be to place a premium upon silence and offer a reward for concealment of defense.

It is true that counsel cite and quote from many cases relative to the duty of the court to instruct the jury upon the is-

sues presented by the evidence, and particularly upon the evidence of self-defense. But the cases developing the rule contended for were cases where there was no doubt as to the issue of self-defense being involved. See the cited cases of Nelson v. State, 34 Okl.Cr. 187, 245 P. 1009, Daniel v. State, 67 Okl.Cr. 174, 93 P.2d 47, and Owens v. State, 93 Okl.Cr. 156, 225 P.2d 812, 814. In the body of the opinion in the Owens case, this court said:

"This court has held that in a prosecution for assault with intent to kill, where the evidence tends to show justification in self-defense, it is the duty of the court, whether requested or not to submit instructions covering the law of the case, and, where that has not been done, this court on appeal will reverse the judgment. Nelson v. State, 34 Okl.Cr. 187, 245 P. 1009; Daniel v. State, 67 Okl.Cr. 174, 93 P.2d 47. However it is equally well settled that where there is no evidence to show justification in self-defense it is not necessary for the court to give such an instruction. Smith v. State, 22 Okl. Cr. 383, 212 P. 1012; Fabry v. State, 23 Okl.Cr. 215, 213 P. 910; Gaddy v. State, 81 Okl.Cr. 236, 162 P.2d 787."

█ In view of the facts developed in the within case, we think 22 O.S.1951 §§ 831 and 856 pertinent and applicable. These two sections of the statute contemplate that if the defendant or his counsel is not satisfied with the instructions given by the court, and desires additional or other instructions, same shall be prepared in writing and submitted to the trial court.

See on the subject: Williams v. State, 12 Okl.Cr. 39, 151 P. 900; Ford v. State, 52 Okl.Cr. 321, 5 P.2d 170; Adams v. State, 62 Okl.Cr. 167, 70 P.2d 821; Green v. State, 70 Okl.Cr. 228, 105 P.2d 795; Chapman v. State, 84 Okl.Cr. 41, 178 P.2d 638; Ridinger v. State, 97 Okl.Cr. 377, 267 P.2d 175; Williams v. State, 89 Okl.Cr. 146, 205 P. 2d 1164.

In the case of Green v. State, supra, this court said [70 Okl.Cr. 228, 105 P.2d 797]:

"The first assignment of error argued is: 'The court committed error in its failure to instruct the jury on the law of self-defense.'

"Upon the record before us counsel for plaintiff in error have not properly raised the question.

"Only prejudicial errors raised by exceptions reserved require a new trial, and it is only when we are satisfied that the verdict is contrary to law, or to the evidence, or that injustice has been done, that we are permitted to reverse a conviction whether or not an exception has been taken in the trial court.

"The instructions given by the court submitted the issue of assault with intent to kill as defined by Penal Code, sec. 1873, 21 Okla.St.Ann. § 652, and submitted the included offense of assault with a dangerous weapon with intent to do bodily harm, without justifiable or excusable cause, as defined by Penal Code, Sec. 1870, 21 Okla.St. Ann. § 645.

"Other instructions fully and correctly defined the degree of evidence required in order to entitle the state to a verdict of conviction. No objections were made or exceptions taken to the instructions given by the court.

"It is also urged that the court erred by refusing to give instructions requested by the defendant.

"The Code of Criminal Procedure provides the method of procedure for requesting instructions, and a defendant may submit to the court written instructions with the request that they be given, and how objections and exceptions shall be reserved. Secs. 3057, 3079, 22 Okla.St.Ann. §§ 831, 856.

"It has been repeatedly held by this court that it is the duty of counsel for a defendant, where he is of the opinion that additional instructions should be given, to reduce them to writing, and request that they be given. If he fails to do so a conviction will not be

reversed, unless the court is of the opinion, in the light of the entire record, and instructions of the court, that there was a failure to instruct upon some material question of law, and that the defendant has been deprived of a substantial right. Lee v. State, 67 Okl. Cr. 283, 94 P.2d 5; Pulliam v. State, 61 Okl.Cr. 18, 65 P.2d 426; Adams v. State, 62 Okl.Cr. 167, 70 P.2d 821; Russell v. State, 17 Okl.Cr. 164, 194 P. 242; Williams v. State, 12 Okl. Cr. 39, 151 P. 900."

■ Due to the state of the record as to the question of whether the evidence in fact entitled the defendant to an instruction covering self-defense, and in view of the instructions actually given, it is our conclusion that 22 O.S.1951 § 856 is applicable. That is to say, it was the duty of counsel for the defendant, if he was of the opinion that additional instructions should have been given to have reduced them to writing, and request that they be given. Such would have caused the court to have carefully reconsidered the evidence, if any, that would have tended to support the request, and where there was doubt, the court would probably have resolved the doubt in favor of the defendant and given either the requested instruction, or a modified one. But where counsel failed to submit an instruction or by some manner emphasize his idea of defense, the conviction may not be reversed unless the appellate court is of the opinion, in light of the entire record and instructions of the court actually given, that the record imperatively required the instructions complained of and that such failure deprived defendant of a substantial right.

From a consideration of the record as a whole, we do not find that defendant has in fact been deprived of a substantial right, but that the issues were fairly presented to the jury and that defendant received a fair and impartial trial.

The verdict and judgment appealed from is, accordingly, affirmed.

BRETT, P. J., concurs.

NIX, J., dissents.

NIX, Judge (dissenting).

A close examination of the record precludes me from agreeing with Judge POWELL's conclusion that defendant's contention that the trial judge failed to admonish the jury as required by statute was erroneous. The transcript of the record which was sworn to as being a full, true and correct transcript of all the proceedings does not reveal that such admonition was given. However, the transcript does reflect that after the jury was permitted to separate, the defense counsel made the following motion:

"If your honor please, at this time comes now the defendant and objects to the continuing of this trial at this time upon the grounds and for the reason that prior to and during the last recess there was no admonition to the jury covering their conduct during the recess of the case."

This motion was overruled without comment.

The defendant in a motion for a new trial again charged that the trial judge allowed the jury to separate without admonishing the jury. This motion was overruled without comment, or denial of the allegation. The fact was never denied by the trial judge. The state's attorney made no denial in their brief. The transcript of the record showed no admonitions. The authors of the majority opinion justify their conclusion upon a notation in the minutes as follows:

"The court reported being out of the room and making no record as to the court's admonition to the jury, the court announced a short recess."

This they say was sufficient for them to conclude that the trial judge gave the required admonition. I cannot subscribe to such conclusion. I cannot lead myself to believe that a reputable attorney of the bar

would subject himself to the hazard of making false accusations upon which to base his appeal. Neither can I concur in such conclusion when the record substantiates the defendant's allegations. It appears to your writer that had said allegation been unfounded, the trial judge would have refuted the allegation by so stating in the record. I am of the opinion that when the question was raised on a motion for a new trial that the court again passed up the opportunity to correct the attorney for defense had the allegation not been true. The attorney general in his brief evidently did not so conclude as he did not attempt to deny the defendant's contention, but attempted to justify it. In the majority opinion Judge Powell quoted with approval and adhered to the findings in the case of Rutherford v. State, 95 Okl.Cr. 311, 245 P. 2d 96, 106, and made clear his desire that nothing stated in the majority opinion was to be considered contrary thereto.

In that case the court said:

"It is therefore our conclusion that a court, at every separation of the jury and at each adjournment in a criminal trial should give the statutory admonition and at least an abbreviated admonition referring to the previous full admonition at each temporary cessation of proceedings, but where it appears, as here, that at the first adjournment, and before any separation of the jury was had, the court had given the statutory admonition, and that the admonition was duly given at each adjournment thereafter, and the record discloses a trial otherwise fair and impartial, the judgment will not be reversed simply because during the session of the court a temporary intermission or recess (while the attorneys retired with the judge to his chambers to consider the admissibility of certain documentary evidence offered by defendant) took place without the admonition being given as a preliminary thereto. * * *

"If the court had failed either prior to the argument in his chambers, had

the same been called to his attention, of admonishing the jury, or had on reconvening of the court failed to question the jurors as to any impropriety, then such failure would have properly constituted *a ground for new trial* and on hearing of motion the rules announced in the Brink and Redman cases [Brink v. Territory, 3 Okl. 588, 41 P. 614; Redman v. Territory, 2 Okl. 360, 37 P. 826], would probably have applied, and the burden would have been on the State to have shown that no impropriety actually took place."

This, and similar decisions of this Court state the established rule. They are based upon similar violations of the statute which I reiterate, 22 O.S.A. § 854:

"The jury must also, at each adjournment of the court, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves or with any one else on any subject connected with the trial, or to form or express any opinion thereon, until the case is finally submitted to them."

It is obvious to your writer that the judge failed to comply with this section of our statutes. Thus, the statute was violated. Under many holdings of this court with reference to juries, when the statute is violated it is presumed that the defendant was prejudiced thereby, and the burden is then upon the state to prove otherwise. The error may have been cured had the trial judge, upon the jurors return to the box, made such inquiry as to show a lack of prejudice; however, he did not do. This court said in Ridley v. State, 5 Okl. Cr. 522, 115 P. 628, 630:

"It is of the utmost importance that jurors and court officials should be held to a strict observance of the provision of the law prescribing their procedure and duties, and their conduct should be such that no possible suspicion can attach to them of having acted in a manner prejudicial to the accused, or

in his favor * * * Courts cannot be too strict in compelling rigid and vigilant observance of the provisions of the statute designed to preserve inviolate the right of trial by jury and the purity of jury trials."

It has long been recognized that the great element of distinction between us in the enemies of democratic form of government is trial by jury. It must not only be preserved but rigid enforcement must be exemplified in maintaining the safeguards surrounding its sanctity. These safeguards must never be so relaxed as to cast suspicion thereon. Its cloak of purity must at all times be kept clean. The statute did not intend that a jury could leave the jury box and court room and mix and mingle with the people and crowd usually present without first being admonished, that it is their duty not to talk among themselves or with any one else about the trial or to form or express any opinion. The statutes are clear and concise. It was enacted for a good purpose. A violation should not be made an exception. It should be strictly complied with in every instance. To affirm the instant case would be the first step in gradually pulling away from the general rule and opening the gate for future exceptions to further confuse the issue.

BRETT, Presiding Judge (concurring).

The sole proposition that prevents unanimity in the case at bar is, did the trial court admonish the jury when declaring a recess. I could readily agree with what my learned associate recites in his dissenting opinion, if the record affirmatively supported his conclusions. But it is not so established in the record. It does not appear that the court did not admonish the jury, during the recess in question, not to talk about the case among themselves or permit others so to do. If the record so showed, then under a long line of decisions we would be compelled to reverse this case.

The record merely shows that the reporter was momentarily not present when the recess was announced. His notes reveal this minute: "The court reporter being out of the room and making no record of the court's admonition to the jury, the court announced a short recess." This writer is of the opinion that the language in the minute readily supports the presumptions long indulged by this court, that where the record does not affirmatively disclose the doing of something which was its duty to do, in the absence of proof to the contrary, every presumption favors the regularity of the proceedings. Such is the situation in the case at bar. It does not affirmatively appear that the trial court did not admonish the jury—it only appears that the reporter was absent if and when the same took place. The burden was on the appellant to show that the trial court gave no admonition to the jury. Galbert v. State, Okl.Cr., 278 P.2d 245. And see 22 Okl.St.Ann. § 859. If no such admonition was given, it was the duty of counsel to immediately dictate such fact into the record, and in the absence of the jury, he should have offered affirmative proof by witnesses, court attaches, etc., that no such admonition was given. There is nothing in the record except the heretofore recited minute, to sustain the conclusion set forth in the dissent. To support the conclusion reached we must presume error. This court has repeatedly said error will never be presumed, but must affirmatively appear in the record. Wilson v. State, 3 Okl.Cr. 714, 109 P. 289; Anderson v. State, 8 Okl.Cr. 90, 126 P. 840; Edwards v. State, 9 Okl.Cr. 306, 131 P. 956, 44 L.R.A.,N.S., 701; Alexander v. State, 35 Okl.Cr. 89, 248 P. 873; Bynum v. State, 40 Okl.Cr. 352, 268 P. 993; Kennamer v. State, 59 Okl.Cr. 146, 57 P.2d 646; Nowlin v. State, 65 Okl.Cr. 165, 83 P.2d 601; Denmark v. State, 71 Okl.Cr. 424, 112 P.2d 437, 113 P.2d 608.

To follow the dissenting opinion it would be necessary to violate this time honored rule.